## The Fitchburg Railroad Company *vs.* The Grand Junction Railroad and Depot Company.

The validity of the appointment of one who holds a commission as commissioner to supervise certain work, under *St.* 1856, *c.* 296, " to promote the public safety and convenience, by a bridge at the intersection of the Boston and Lowell, the Fitchburg, and Grand Junction railroads, in Somerville," and to apportion the cost thereof between the Fitchburg Railroad Company and the Grand Junction Railroad and Depot Company, in such proportion as should by him be deemed equitable, cannot be inquired into in an actiₙn brought under that statute by the Fitchburg Railroad Company against the Grand Junction Railroad and Depot Company, to recover a fair and just proportion of the cost incurred in doing the work.

CONTRACT to recover of the defendants reimbursement of a proportionate part of the expense of constructing a railroad bridge, and altering the curve and grade of several railroad tracks and highways, at a place where the Fitchburg Railroad, the Boston and Lowell Railroad, and the Grand Junction Railroad formerly crossed each other at grade in Somerville.

The action was founded upon *St.* 1856, *c.* 296, " to promote the public safety and convenience, by a bridge at the intersection of the Boston and Lowell, the Fitchburg, and Grand Junction railroads, in Somerville," by which the Fitchburg Railroad Company and the Grand Junction Railroad and Depot Company were authorized to lower their tracks at the junction with the Boston and Lowell Railroad, in Somerville; and the Boston and Lowell Railroad Company were authorized to raise their track, so that the tracks of the former companies might pass under it; and, so far as might be necessary for the purpose, to change the curve and grade of highways and connecting tracks, with the consent of the county commissioners of the county of Middlesex. The statute required a bridge to be built in a certain manner described; directed what portion should be built by the Boston and Lowell Railroad Company; and further directed that a certain part of the work should be done by the Fitchburg Railroad Company, under the supervision of a commissioner, to be appointed by the governor, who should apportion the cost

of this part of the work between the Fitchburg and Grand Junction companies, in such proportions as should by him be deemed equitable; and provided that, if the award of such commissioner should not be promptly paid, the former company might recove. of the latter a fair and just proportion of the cost incurred. Pursuant to the provisions of this act, Augustus C. Carey was appointed as commissioner by the governor and council, and the work described was done under his supervision, and he made an apportionment of the expense, of which the defendants were notified, and a demand of payment was made upon them; and, on their refusal to pay, this action was brought.

At the trial in this court, at April term 1860, before *Shaw*, C. J., Mr. Carey was called as a witness, and his commission was produced, by which it appeared that he was appointed in pursuance of the application of the Fitchburg Railroad Company and the Lowell Railroad Company. The commission was dated August 29 1856. The further testimony of the witness as commissioner, and all his acts in that capacity, were objected to on the ground that his appointment was in contravention of the Constitution of Massachusetts, *c.* 6, art. 2, *cl.* 2, which declares that no person shall be capable of holding at the same time more than two offices, which are to be held by appointment of the governor, or the governor and council, or the senate, or the house of representatives, or by the election of the people of the state at large, or of the people of any county, military offices and the offices of justices of the peace excepted.

For the purpose of presenting the question distinctly, it was conceded by the parties, that Mr. Carey was a state senator for the year 1856; that the legislature adjourned in June to the day next preceding the first Tuesday of January 1857; that he also held an appointment by the governor and council as commissioner for the supervision of the works authorized to be done by the Fitchburg Railroad Company, in widening their bridge over Charles River, in pursuance of the provisions of *St.* 1855, *c.* 230, by a commission dated July 10 1855; that he received a commission under *St.* 1856, *c.* 296, before the one now produced, and accepted it, and entered upon the duties of the office,

but, objection being made that he already held two public offices, and therefore could not hold this, he tendered his resignation of the office of senator to the governor and council, the secretary of state, and the president of the senate, in vacation, by a letter addressed to each of them; that the senate did not meet again during that year, and never acted on his resignation; and that, after the delivery of these letters of resignation, he was again appointed and received a new commission, under which he proceeded to execute the powers vested in the commissioner by the act referred to.

The plaintiffs offered in evidence the license and authority granted by the county commissioners of the county of Middlesex to do the acts referred to, upon the petition of the plaintiffs and the Boston and Lowell Railroad Company; and it appeared by the records that, at a meeting of the county commissioners, to which an order of notice upon this petition was made returnable, the defendants filed a protest against the grant of authority prayed for, and against any action in the premises, and gave notice that, if any authority to change locations was rightfully granted, they should claim damages. At that meeting the license prayed for was granted.

Upon these facts it was ruled: 1. That the office of commissioner for the supervision and regulation of building bridges over navigable waters, under *St.* 1855, *c.* 230, was a public office within the meaning and intent of the constitution. 2. That the commissioner had not duly resigned and divested himself of the office of senator when the second commission was issued. 3. That his acts and doings as commissioner, supervisor and assessor were not binding on the defendants, as those of a commissioner duly appointed under this act, and cannot be given in evidence as such. Whereupon the plaintiffs became nonsuit, subject to the opinion of the whole court upon the correctness of the rulings.

*E. H. Derby,* for the plaintiffs. 1. A seat in the senate is not an office, in the sense in which the constitution uses that term Throughout the constitution, an office and a seat in the legislature are spoken of as distinct things. See Const. Mass. *c.* 6,

art. 2, *cl.* 3, 5; Amend. Const. art. 8.  2. Even if a seat in the senate is an office, it is not one of the offices referred to in the Const. *c.* 6, art. 2, since it is not held in any of the ways there mentioned.  Senators were then and are now chosen by the people of a district; and the fact that the boundaries of the district for which Mr. Carey was chosen were then identical with the boundaries of a county is immaterial.  The counties of Nantucket and Dukes County formed but one senatorial district.  Rev. Sts. *c.* 5, § 2.  3. If, however, a seat in the senate and the office of commissioner under *St.* 1855, *c.* 230, were incompatible with this office of commissioner, the very fact of Mr. Carey's acceptance of the last office divested him of one of the others.  *Milward* v. *Thatcher*, 2 T. R. 87.  *The People* v. *Carrique*, 2 Hill, 97.  Cushing's Law & Pr. of Legis. Assemblies, § 469.  Willcock on Municipal Corporations, 240.  4. This consideration applies with especial force to the office of commissioner under *St.* 1855, *c.* 230, because both commissionerships came from the same appointing power; and his appointment by the governor to the second office implied an acceptance by the governor in advance of a resignation of the former, while Mr. Carey's acceptance of the second office implied his resignation of the former.  5. Whether Mr. Carey was or was not a commissioner *de jure*, he certainly was one *de facto*.  He held his office by color of title, and his acts are binding upon the parties to this suit.  Courts of justice will not decide upon the right of a man to hold an office in a suit to which he is not a party.  And the public are not required to look into the previous history of every officer they may wish to employ, in order to see if he has all the qualifications which entitle him to hold his office.  See *Douglass* v. *Wickwire*, 19 Conn. 492; *The People* v. *Collins*, 7 Johns. 554; *Bucknam* v. *Ruggles*, 15 Mass. 182; *Fowler* v. *Bebee*, 9 Mass. 234; *Baker* v. *Shephard*, 4 Foster, 212; *Hoagland* v. *Culvert*, Spencer, 387; *Commonwealth* v. *Kirby*, 2 Cush. 577.

*G. S. Hale*, for the defendants.  1. Mr. Carey, when he was appointed commissioner under *St.* 1856, *c.* 296, held two offices within the meaning of the constitution.  He was chosen sen-

ator by the people of a county. Const. Mass. *c.* 1, sect. 2, art. 1. Rev. Sts. *c.* 5, § 2. The position which he held by appointment of the governor and council was an office. Bouvier's Law Dict. Commissioner, Office and Officer. 2 Bl. Com. 36. 3 Kent Com. (6th ed.) 454. *Dickson* v. *People*, 17 Ill. 191. 2. The resignation attempted was ineffectual. It was not and could not be accepted by the senate; and a senator cannot divest himself of his office by resignation, without the action of the senate. May's Law & Pr. of Parliament, 434, 435. Cushing's Law & Pr. of Legis. Assemblies, 193–198. Mass. Election Cases, (ed. 1853,) 29, 30, 243, 244, 719. *Van Orsdall* v. *Hazard*, 3 Hill, 243. *The King* v. *Patteson*, 1 Nev. & Man. 612. *Rex* v. *Mayor of Rippon*, 1 Ld. Raym. 563. S. C. 2 Salk. 433. *Hazard's case*, 2 Rolle, 11. 3. Mr. Carey was not an officer *de facto*. An officer *de facto* holds the office. But the constitution declares that no person shall be capable of holding more than two offices, of the kinds therein described. 4. Even if he was an officer *de facto*, the defendants may question his authority. He was appointed upon the application of the plaintiffs. They knew that he held the other offices, and that his authority was denied. There has been no waiver by the defendants, by an omission seasonably to take the objection. The invalidity of his acts results directly from constitutional provisions. And it is submitted that the principle upon which acts of officers *de facto* are held valid for reasons of public policy, as to innocent third persons, when collaterally called in question, does not apply to the case of a person who holds an office of which he is constitutionally incapable, and acts directly upon the rights and property of a party denying his authority, while the adverse party is cognizant of his incapacity to hold the office, and still applies for his appointment and seeks to enforce his acts. See *Hippesley* v. *Tucke*, T. Jones, 81; *Ipsley* v. *Turk*, 2 Mod. 194; *The King* v. *Lisle*, Andrews, 163; *O'Brian* v. *Knivan*, Cro. Jac. 552, 554; *Harris* v. *Jays*, Cro. Eliz. 699; *Crew* v. *Vernon*, Cro. Car. 97; *The King* v. *Corp. of Bedford Level*, 6 East, 356, 368, *Smith* v. *Normant*, 5 Yerg. 271; *Cummings* v. *Clark*, 15 Verm. 653; *Moore* v. *Graves*, 3 N. H. 408.

BIGELOW, C. J.  We do not deem it necessary to the decision of the question raised in this case to determine whether the resignation by the commissioner of his seat in the senate was lawful and valid, and duly vacated his place as a member of that body ; nor whether there was a constitutional incompatibility which would prevent him from lawfully holding his two appointments as commissioner, under *Sts.* 1855, *c.* 230, and 1856, *c.* 296, at the same time that he was entitled to claim his rights and perform his duties as a senator.  These are interesting and important questions, but they are immaterial to the matter in issue between the parties to this suit.

The commissioner, under whose direction and control the work authorized by *St.* 1856, *c.* 296 was done, acted under an appointment made in pursuance of § 8 of that statute, by the governor and council.  He was not therefore a mere usurper of or intruder into a public office.  He acted under a commission *prima facie* valid, and issued by an authority apparently empowered to invest him with the legal rights and powers of the office to which he was appointed.  If there was any illegality or incompatibility which would incapacitate him from holding the office, it arose from extrinsic facts which did not appear on the face of the commission under which he acted in supervising the work for which reimbursement is sought in this action.  He was therefore clearly an officer *de facto*.  The precise definition of an officer *de facto* is, one who comes in by the forms of law, and acts under a commission or election apparently valid, but, in consequence of some illegality, incapacity or want of qualification, is incapable of lawfully holding the office.  The exact distinction between an usurper or intruder and an officer *de facto* is this : the former has no color of title to the office ; the latter has, by virtue of some appointment or election.  It follows that the acts of the commissioner cannot be called in question in this suit.  They are valid as respects third persons, and cannot be impeached in a collateral way in proceedings to which the officer is not a party.  This principle has often been recognized and applied by this court, and quite recently in *Coolidge* v. *Brigham, ante,* 333.  It is difficult to find a stronger illustration

47 *

of the application of this rule than is furnished by the case of *Fowler* v. *Bebee,* 9 Mass. 231, where it was held that the acts of an officer, appointed without any authority of law, could not be invalidated or inquired into in a suit between third persons. See also *Bucknam* v. *Ruggles,* 15 Mass. 180. The case of *Mc Gregor* v. *Balch,* 14 Verm. 428, is very similar to the one at bar. It was there decided that, under the constitution of the State of Vermont, a person could not hold the office of post-master under the government of the United States and that of justice of peace under the authority of the state, at the same time; but that his acts as a justice could not be set aside or invalidated in a suit between third persons, notwithstanding this incompatibility. It was urged by the counsel for the defend-ants, that this well settled principle is not applicable to the present case, because the commissioner was appointed on the application of the plaintiffs, and his duties were confined by law to acts which must operate directly on the rights and property of the party denying his authority. But we can see no founda-tion for this argument; certainly it is not sustained by the authorities. The cases all recognize the rule as being founded on public policy, which does not allow the title of a person to an office to be inquired into and determined in proceedings to which he is not a party; nor the rights of third persons to be affected by illegalities or informalities in the appointment or election of public officers who are acting under color of title. Indeed the rule has been expressly held to apply to all public officers, whatever may be the nature of their duties. *Bucknam* v. *Ruggles, ubi supra.* It does not depend on the nature or ex-tent of their authority or jurisdiction. Certainly in the present case it would work great hardship and injustice, if the plaintiffs were made to forfeit all right to reimbursement for expenses incurred in pursuance of a public statute, and for the mutual benefit of themselves and the defendants, by reason of the irreg-ular or improper action of the executive authority of the state, in making an appointment to the office of commissioner of a person constitutionally disqualified for the place. It is no an-swer to this suggestion that the appointment was made at

the request of the plaintiffs. They were expressly authorized by the eighth section of the statute of 1856, *c.* 296, to make application to the governor for such appointment. But it does not appear that they designated the individual to be appointed, or had anything to do with his selection. On the contrary, the presumption is that the appointment was made by the governor with the consent of his council without any reference to the wishes of the parties concerned, and solely with regard to the public interests involved in the faithful and impartial performance of his duties. Nor can it make any difference that the plaintiffs were informed by the defendants that they denied the authority of the commissioner to perform the duties of his office, by reason of the irregularity and invalidity of his appointment. They were not bound to act or to refrain from action in consequence of such a notice. They had a right to presume that the commissioner, acting under an appointment from the chief magistrate of the state, sanctioned by his constitutional advisers, was rightly in office. It was their duty so to regard him, because, being an officer *de facto*, he had a right to exercise the authority conferred on him by his appointment. If the defendants doubted the validity of his appointment, or intended to call it in question, they might have resorted to the proper steps to obtain a stay of his proceedings by a *quo warranto*, filed by the attorney general as the representative of the government, under which the right of the commissioner to his office could be legally tried and adjudicated. *Commonwealth* v. *Fowler*, 10 Mass. 290. But they had no right to lie by and permit the plaintiffs to incur large expenditures under the authority of the commissioner, and seek to avoid a reimbursement of their share by attempting to impeach and set aside his doings, in a suit brought to recover the amount which they are legally bound to pay.        *Nonsuit taken off; case to stand for trial.*