No. 10,667.

THE STATE, EX REL. CROPPER, *v.* MURDOCK ET AL.

JUDGE PRO TEM.—*Repeal of Statute.*—The 4th section of the act of March 1st, 1855, 2 R. S. 1876, p. 10, relative to the appointment of special judges, was not repealed by section 1383, R. S. 1881, on the same subject.

SAME.— *Appointment.— Jurisdiction. —Collateral Attack.— Presumption.*—The appointment of a judge *pro tem.* at one term of court, to act at the next term, though irregular, gives such color of right to act at the next term as to make a judge *de facto*, whose authority can not be questioned collaterally by one who at the time made no objection; and in such case it will be presumed, the contrary not appearing, that there were sufficient reasons for the appointment when made.

From the LaPorte Circuit Court.

W. N. Harding and A. R. Hovey, for appellant.

F. T. Hord, Attorney General, W. T. Brown, Prosecuting Attorney, and C. F. Robbins, for appellees.

ZOLLARS, J.—On the 11th day of July, 1881, on a plea of guilty to a charge of grand larceny, entered in the Marion Criminal Circuit Court, appellant, Cropper, was sentenced to five years imprisonment in the State's prison. After the judgment and sentence, he was conveyed to the prison at Michigan City by the sheriff of the county, and placed in said prison, under the charge and custody of appellee Murdock, who was, and has continued to be, the warden of that prison. To relieve himself from this imprisonment, appellant commenced this habeas corpus proceeding in the LaPorte Circuit Court, in September, 1882. Upon the proper writ, he was brought before the court, a hearing was had, and he was remanded to the prison and to the custody of appellee Murdock.

In the court below, appellant filed exceptions to the return to the writ by Murdock. These were overruled and he excepted. After the decision of the court as above stated, he moved for a new trial. The substance of this motion is, that the finding and decision of the court below are contrary to the law and evidence. This motion was overruled, and he excepted. These rulings are assigned as error in this court.

To establish the wrongfulness and illegality of his imprisonment, appellant introduced in evidence a certified transcript of certain proceedings had in the Marion Criminal Circuit Court. This transcript is before us, as a part of the record in the cause. From this record, the following material facts are shown: On the 2d day of July, 1881, the same being the 156th judicial day of the January term of the Marion Criminal Circuit Court, the Hon. James E. Heller, judge of that court, appointed Hezekiah Dailey pro tempore judge of said court. The record of the appointment, oath and other proceedings on that day, is as follows:

"Comes now Hezekiah Dailey, and presents the following appointment:

" 'STATE OF INDIANA, } ss : *Marion Criminal Circuit Court.*
MARION COUNTY. }

I, James E. Heller, judge of the Criminal Circuit Court of Marion county, do hereby appoint Hezekiah Dailey, an attorney of this court, judge *pro tempore* of the said Marion Criminal Circuit Court.       JAMES E. HELLER, Judge.

" ' I, Hezekiah Dailey, do solemnly swear that I will support the Constitution of the United States, and the Constitution of the State of Indiana, and that I will faithfully discharge the duties of the office of judge *pro tempore*, of the Marion Criminal Circuit Court, so help me God.

" 'HEZE'H DAILEY.

" 'Subscribed and sworn to before me, this 2d day of July, 1881.       " 'D. M. RANSDELL, Clerk.

" 'JAMES E. HELLER, Judge.' "

The clerk of the Marion Criminal Circuit Court, in his certificate to this part of the record, states, that it is "a complete copy of the proceedings had in said court, and entered in the records thereof, in the matter of the appointment of Hezekiah Dailey, Esq., as judge *pro tempore* of the Marion Criminal Circuit Court, and that said Hezekiah Dailey did act as such judge *pro tempore* of said court, under said appointment, and by no other authority, from the 2d day of July, 1881, to the 12th day of July, 1881, both days inclusive, as appears of record in my office."

Said transcript further shows that, on the 9th day of July, 1881, the same being the sixth judicial day of the July term of said court, Mr. Dailey presiding as such judge *pro tempore,* the grand jury returned into open court an indictment against appellant, Cropper, charging him with grand larceny.

On the 11th of the same month, the same *pro tempore* judge presiding, appellant, Cropper, without any objection on that account, pleaded guilty to the charge and was sentenced to five years' imprisonment in the State's prison. In addition

to the facts so shown by said transcript, it was agreed, on the hearing below, that at the time of the appointment of Mr. Dailey as such *pro tempore* judge, and from that time until the 12th day of July, 1881, both days inclusive, Judge Heller, the regular judge of the said criminal court, was in good health, qualified and competent to hold the court, to receive the report of the grand jury, and to try the cause in which appellant was defendant, in said criminal court.

These agreed facts, and the evidence furnished by said transcript, present the material question in this cause.

It is claimed by appellant that Dailey was not a judge *de jure*, nor *de facto*, at the time the indictment was returned, the plea entered, and judgment rendered in the criminal court, and that, therefore, all of the proceedings in that court, so far as they affect him, were and are void, and his imprisonment based thereon wrongful and illegal. This is the only question discussed by appellant's counsel, and upon it they rest their case.

It is contended that at the time Dailey was so appointed the power of Judge Heller to make an appointment was given and limited by the act of March 7th, 1877 (Acts 1877, p. 28), and that the appointment, as made, was not authorized by that act. If we must look to that act alone for authority, the appointment in this case was clearly irregular and illegal.

Section 4 of the act of March 1st, 1855, 2 R. S. 1876, p. 10, provides, substantially, as follows: If, from any cause, any judge of a circuit court shall be unable to attend and preside at any term of such court, or during any day or part of such term, such judge may appoint, in writing, any other judge of a court of record of this State, or any attorney thereof eligible to the office of such judge, to preside at such term, or during any day or part of said term. Such written appointment shall be entered on the order-book of such court, and such appointee shall, after being sworn, if he be not a judge of any court of record, conduct the business of such court, subject to the same rules and regulations that govern

circuit courts in other cases, and shall have the same authority during the continuance of the appointment, as the judge elect, or making such appointment.

This court has recently held that this section, so far as it relates to the power of the judge to make appointments in the cases therein provided, was not repealed by the act of 1877, *supra,* and is still in force; and still more recently, that this and other statutes relating to the appointment of *pro tempore* judges applies to the criminal courts of the State. *Zonker* v. *Cowan,* 84 Ind. 395; *Feigel* v. *State,* 85 Ind. 580.

We need not go into an examination of the provisions of the Constitution to determine the constitutionality of this act. Its validity has been a settled question in this State for nearly thirty years. *Starry* v. *Winning,* 7 Ind. 311; *State* v. *Dufour,* 63 Ind. 567.

Was the appointment of Mr. Dailey valid under the section above set out? It was evidently not the purpose of the Legislature in adopting this section, that the judges of the State might, on any mere pretext, abandon their courts and call others to hold them. This is made the more apparent by the latter part of the section, which provides that except the absence of the judge be caused by sickness, the compensation of the appointee shall be deducted from his salary. What reasons Judge Heller may have had for making the appointment, or whether for any cause he was unable to attend and preside, we do not and can not know from the record in this cause, as upon these points it is silent. It will be presumed in this collateral proceeding, that the reasons were sufficient, and the causes ample.

The appointment in this case was made in the latter part of the January term, and two days before the commencement of the July term, of the criminal court. The appointment is general, not stating whether it was made for the remaining two days of the January term, or the coming July term. On the day it was made, the appointee took the oath and entered upon the discharge of his duties as such, and continued to act

as such until the 13th day of July, in the July term.   From the fact that Dailey continued to preside in the July term, it is evident that the judge meant that his appointment should extend into that term.   If the appointment had been presented and recorded in the order-book, with the oath, at the beginning of the July term, and not in the January term, there could be no question about the regularity of the appointment.   No particular form is required in the written appointment.   In one case, a letter addressed to the clerk, with a request to notify the appointee, was held sufficient.   *Kambieskey* v. *State*, 26 Ind. 225.

A strict construction of the statute, we think, would require the recording of the appointment and oath in the order-book at the term in which the appointee presides.   We think that the appointment in this case, as applied to the July term, was irregular; but we are not prepared to say that it and all of the proceedings of the court while the appointee presided were void.   The regular judge had the right, under the law, to make an appointment of a judge *pro tempore* to preside in the July term.   Mr. Dailey was acting under a written appointment and an oath, which were recorded in the order-book of the court.  From the 2d to the 12th day of July, both days inclusive, he presided in the court under the appointment, in good faith, believing, doubtless, that he had a right to so preside.   During that time the public acquiesced in that claim of right, and appellant, Cropper, without any kind of objection, voluntarily entered his plea of guilty.   What might have been the result if appellant had, at the proper time, in the criminal court, objected to the authority of the presiding judge, and brought his case into this court on appeal, or what the result might have been in a direct proceeding to question that authority, we need not and do not decide.

It is clear to us that appellant can not successfully attack the proceedings and judgment of the Marion Criminal Circuit Court, in this collateral proceeding.   *Case* v. *State*, 5 Ind. 1.

After deciding that the county officers had no right to make the appointment of a judge to preside at the term of court in which Case was convicted, the court says : "However, the view just taken does not dispose of this case. The appointment constitutes a part of the record. It appears in legal form, and gave to the appointee at least a colorable title to the office. He was no usurper, but supposed himself to be rightfully invested, and acted in good faith. A court de facto, if not de jure, was thus constituted. During the trial, no attempt was made to impeach the authority of that court. And after conviction it was too late to question the validity of the title under which its duties were exercised. It has been decided that an objection to the commission of the judge should be made on the trial."

In the case of Feaster v. Woodfill, 23 Ind. 493, the court, after citing and approving the case above, says : "It is then well settled that such an appointment may be made, and when made, even in a case not within the act, that it gives a color of right to the office, so as to make a court de facto, if not de jure ; that in a case when the appointment is regular on its face, the objection must be made at the trial, or all objections to the authority of such appointee will be deemed waived." See, also, Hyatt v. Hyatt, 33 Ind. 309 ; Kennedy v. State, 53 Ind. 542 ; Watts v. State, 33 Ind. 237 ; Winterrowd v. Messick, 37 Ind. 122.

It is said by counsel that parties can not, by agreement or otherwise, waive the jurisdiction of the court over the subject-matter. That is true where the court, as a court, has no jurisdiction. The Marion Criminal Court had not only jurisdiction, but exclusive jurisdiction, over the subject-matter in this instance. The objection is not to the court, but to the acting judge of that court. Business can not be transacted in a court without a judge, but the court does not cease to exist with the resignation or death of the judge. The above cases show, and the authorities elsewhere are to the

same effect, that parties may waive irregularities in the appointment of a judge *pro tempore.*

If such appointee holds under color of right he is, while so holding, a judge *de facto,* and the validity of his acts can not be questioned by a party, for the first time, in a collateral attack. And so in this case it is clear to us that, having submitted his case without objection, appellant can not question the authority of Dailey in this proceeding.

Much learning has been bestowed upon the question as to what, in given instances, may constitute an officer *de facto*, and the proper manner of calling in question the validity of the acts of such an officer. It is not necessary that we should, in this case, enter into a review of the many cases in this and the mother country upon these subjects. They fully support our position in this case, and we content ourselves with a citation of the following: *Ex parte Strahl,* 16 Iowa, 369.; *State* v. *Alling,* 12 Ohio, 16 ; *State* v. *Anone,* 2 Nott & McCord, 27 ; *State* v. *Carroll,* 38 Conn. 449 (19 Am. R. 409) ; *Masterson* v. *Matthews,* 60 Ala. 260.

It follows from the conclusion reached by us in this case, that the judgment below must be affirmed, and it is so affirmed, at the costs of appellant.