PATTISON ET AL. *v.* HOGSTON, ADMINISTRATOR, ET AL.

[No. 12,807. Filed July 1, 1927. Rehearing denied October 6, 1927. Transfer denied October 8, 1929.]

*John A. Kersey, W. H. Eichhorn, Frank W. Gordon* and *John H. Edris,* for appellants.

*S. L. Stricler, A. G. Messick* and *Marshall Williams,* for appellees.

McMahan, J.—This is an action by Mary A. Pattison, Eva M. Cabe, and James F. Hogston to enjoin the administrator of the estate of James S. Hogston from selling certain real estate pursuant to an order of sale theretofore made by the Grant Circuit Court.

James S. Hogston died intestate in 1921, the owner of certain real estate in Grant county. The Grant Trust and Savings Company, having been appointed administrator of his estate, filed its petition to sell the said real estate for the purpose of paying debts. The decedent left surviving as his only heirs, Mary A. Pattison, Eva M. Cabe, James F. Hogston, Alfred Hogston, and Richard Hogston, each of whom became the owner of an undivided one-fifth interest in said land. The above-named heirs of the decedent were made defendants in the proceedings to sell. The administrator in its petition for sale alleged it was necessary to sell the real estate for the purpose of paying certain designated debts which were liens on the real estate. Among the debts for the payment of which the administrator asked that the real estate be sold were five judgments, one in favor of Emma Jaqua, one in favor of Emma Frelof Jaqua, one

in favor of Frelof Jaqua, and two in favor of Richard Hogston.

The five heirs of the decedent were made defendants in the proceeding of the administrator to sell. None of the lienholders were made defendants. Mary Pattison, Eva M. Cabe, and James F. Hogston appeared and filed a "partial" answer. They also filed a cross-complaint, wherein they attempted to attack the validity of the above-mentioned judgments. The defendants to this cross-complaint were the persons in whose favor the judgments had been rendered, the administrator not being a party thereto. The cross-complainants filed an affidavit for change of judge because of the bias and prejudice of the regular judge and a special judge was appointed and assumed jurisdiction and heard the petition to sell and the issue presented by the cross-complaint. There was an interlocutory decree ordering the real estate sold subject to the several liens. There was also a judgment against the cross-complainants on their cross-complaint. From that judgment, the cross-complainants appealed. The only question raised in that appeal related to the judgment on the cross-complaint, wherein it was adjudged that the judgments mentioned in the cross-complaint were valid. No question was raised in that appeal concerning the order of sale. That judgment was affirmed, and the validity of the five judgments sustained. See *Pattison* v. *Grant Trust, etc., Co.* (1924), 195 Ind. 313, 144 N. E. 26. After the affirmance of that judgment, the administrator filed its petition to modify the order of sale so that the land could be sold free of the liens instead of being sold subject thereto. With this petition, the administrator filed an appraisement of the real estate and the written consent of the several lienholders consenting that the court might fix the amount and priority of their liens and that their respective liens be transferred to the proceeds

arising from the sale of the real estate. Appellants appeared to this application and filed written objections to the modification of the order of sale, on the ground that the original order of sale was void because no appraisement of the real estate had been made at or before the making of such order, and for the further reason that the court had no authority to allow an appraisement to be filed after the affirmance of the judgment, or, on the appearance and consent of the lienholders, to order the land sold free of liens. No objection was made to the regular judge of the court hearing the application of the administrator for a modification of the order of sale, but the same was submitted to the court, the regular judge presiding, and the order of sale modified. That order is in full force and effect, unappealed from and unreversed. This is a collateral attack on the order of sale as modified and must fail unless that order is absolutely void.

At this point, we call attention to the fact that the record is silent as to whether an inventory and appraisement of the real estate was made and filed at the time of or before the court made the original order of sale. If the filing of an appraisement was necessary, as appellants contend, in order to give the court jurisdiction to make the order of sale, we ought to presume, in the absence of any evidence, that all the jurisdictional steps were taken and that the court had jurisdiction to make the order. The fact that an appraisement was filed with the petition to modify will not overthrow the presumption that the court had jurisdiction when it made the original order.

Where an administrator asks to have land sold subject to liens, the holders of the liens need not be made defendants. If such an order has been made and the administrator thereafter discovers that it would be advantageous to have the order modified so that the land can be sold free from liens, a petition

can be filed for that purpose. If the lienholders appear and file their consent, as was done in the instant case, they need not be made defendants in the original petition or in the petition to modify.

In *Hall* v. *Price, Admr.* (1895), 141 Ind. 576, 40 N. E. 1084, an administrator procured an order to sell real estate subject to liens. At a subsequent term, the court, on petition of the administrator, ordered the sale to be made free of liens. Later, one defendant who had not been served with process appeared and filed answer asking that the court order the land sold as asked by the administrator, and asked the court to fix the priority of the liens. It was there contended that the second order was invalid because of the first order of sale. In disposing of this contention, the court said: "The first order of sale, procured by appellee, was not a final judgment, but was an interlocutory order, and was subject to be vacated, set aside, modified or changed on petition or motion, until the real estate was sold under such order, the sale confirmed, and until the end of the term of court at which such sale was confirmed, during all of which time the proceedings were *in fieri*."

Is the order of the court modifying the order of sale void or merely voidable because it was made by the regular judge and not by a special judge? The issues presented by the original application of the administrator for the sale of the real estate and the cross-complaint filed thereto were not whether the real estate should be sold for the payment of debts other than the five judgments, but whether any real estate should be sold for the payment of the five judgments, the validity of which appellants challenged by their partial answer and cross-complaint. The answer and cross-complaint of appellants neither raised nor attempted to raise any question other than the validity of the five judgments and the necessity of selling any real estate to pay them. Indeed,

appellants, in their answer, asked that so much of the real estate be sold as would be necessary to satisfy the other debts of the estate and, in open court, agreed that if the judgments mentioned should be finally held to be valid and subsisting judgments no further opposition to their payment would be made in any form, either by action to review or to enjoin enforcement or otherwise. This was the situation when the administrator filed its petition to modify the order of sale. Appellants herein, by their answer, had conceded the real estate should be sold to pay debts and had asked that enough of it be sold to pay all debts except the five judgments, and had agreed in open court that if those judgments should be held valid, no further opposition to their payment would be made by appellants.

When the petition to modify was filed, appellants appeared and filed written objections challenging the right of the court to make the order for the reasons hereinbefore stated. No objection was made to the regular judge hearing the petition to modify. Appellants made no claim that the property should be sold subject to the liens in accordance with the original order of the court, and we think it may be fairly inferred from the record that appellants, by failing to object to the regular judge acting in that matter, consented to his acting. The regular judge was not disqualified because of interest or relationship. The court, as distinguished from the judge, had jurisdiction of the subject-matter and of the parties, and appellants having raised no question below concerning the right of the regular judge to act, could not have presented such question for the first time on appeal, by the claim that the regular judge had no "jurisdiction" of the matter because a change of judge had been taken in the proceedings prior to the hearing on the petition to sell and

on the cross-complaint asking that the five judgments be declared void. If appellants had objected to the regular judge acting, and this was an appeal in that case, and the act of the court in overruling the objection had been properly presented in this court, we would be required to pass on the correctness of such ruling.

In *Carr* v. *Duhme* (1906), 167 Ind. 76, 78 N. E. 322, 10 Ann. Cas. 697, it was held that where the disqualification of the judge was disclosed by the record and known to the parties, and in the absence of a statute relating to the disqualification of judges and prohibiting them from acting, their actions were governed by common-law principles, and that the disqualification of the judge could not be raised for the first time on appeal. The court said: "In cases where the disqualification of the judge renders the proceedings voidable merely and not void, it may be waived by consent of parties. . . . It was appellees' duty, if they desired to object to his acting because of interest, to make such objection at the earliest opportunity, and thereby prevent the accumulation of needless costs and the attainment of a fruitless result. If a party, knowing of a valid objection to a proceeding, neglects to avail himself of it, and stands by or participates therein until a result is reached adverse to his interests, it is but justice that he should bear the consequences which his own folly has suffered to occur."

In *Board, etc.,* v. *Justice* (1892), 133 Ind. 89, 30 N. E. 1085, 36 Am. St. 528, the court said: "The decided weight of authority seems to establish the proposition, that, at common law, the acts of a disqualified judge are not mere nullities; they are liable to be avoided or reversed on proper application, but can not be impeached collaterally. . . . In many of the cases cited as sustaining the proposition that the judgments rendered by a disqualified tribunal are void, it will be found, upon examination, that the judgments so rendered were at-

tacked on appeal, and the language must be construed as applicable to the case before the court."

In *Whitesell* v. *Strickler* (1906), 167 Ind. 602, 620, 78 N. E. 845, 119 Am. St. 524, no objection was made to the special judge sitting in the case, nor to the regularity of his appointment. On appeal, the court said: "All such objections will now be deemed waived."

This court, in *Evans* v. *Rutherford* (1921), 76 Ind. App. 366, 371, 131 N. E. 55, where no objection was made to a special judge assuming jurisdiction, said: "If his authority is not questioned until after a trial is had and a judgment is rendered, all objections, based on the absence of an appointment in conformity with the statute and due qualification, which might have been properly, and possibly successfully made, if timely presented, will be deemed waived."

In *Folger* v. *Barnard* (1919), 73 Ind. App. 523, 125 N. E. 460, it was held that all objections to a special judge, not made when he assumes to act will be waived, the court saying: "Appellants' conduct in this matter looks too much like an attempt to gamble on the decision of the court, and, losing the wager, pull down the stakes, which we cannot permit."

In *State, ex rel.*, v. *Lane* (1916), 184 Ind. 523, 111 N. E. 616, a special judge failed to qualify within the time fixed by the statute which provides that if a special judge fails to qualify within 20 days after appointment, such appointment shall thereupon be held to be vacated. §451 Burns 1926, Acts 1903 p. 343. After the time fixed by the statute, the special judge qualified and assumed jurisdiction, the parties appeared before him and had the cause set for trial. Later, appellant objected to the jurisdiction of the special judge upon the grounds mentioned and asked for a continuance. It was held that such actions by appellant "amounted to a waiver of his objections to the jurisdiction of the special judge."

The decisions of both the Supreme Court and this court, without an exception, hold that objections to the jurisdiction of the judge to try the case, as distinguished from jurisdiction of the court over the subject-matter, may be waived, and, if not raised in the trial court, cannot be attacked for the first time on appeal, nor in a collateral action. In addition to the authorities heretofore cited, see *Case* v. *State* (1854), 5 Ind. 1; *Feaster* v. *Woodfill* (1864), 23 Ind. 493; *Mitchell* v. *Smith* (1865), 24 Ind. 252; *Watts* v. *State* (1870), 33 Ind. 237; *Hyatt* v. *Hyatt* (1870), 33 Ind. 309; *Winterrowd* v. *Messick* (1871), 37 Ind. 122; *Rose* v. *Allison* (1872), 41 Ind. 276; *Kennedy* v. *State* (1876), 53 Ind. 542; *Oppenheim* v. *Pittsburgh, etc., R. Co.* (1882), 85 Ind. 471; *State, ex rel.,* v. *Murdock* (1882), 86 Ind. 124; *Mattingly* v. *Paul* (1882), 88 Ind. 95; *Adams, Sheriff,* v. *Gowan* (1883), 89 Ind. 358; *Board, etc.,* v. *Seaton* (1883), 90 Ind. 158; *Kenney* v. *Phillipy* (1883), 91 Ind. 511; *Smurr* v. *State* (1886), 105 Ind. 125, 4 N. E. 445; *Bartley* v. *Phillips* (1888), 114 Ind. 189, 16 N. E. 508; *Greenwood* v. *State* (1889), 116 Ind. 485, 19 N. E. 333; *Bowen* v. *Swander* (1889), 121 Ind. 164, 22 N. E. 725; *Lillie* v. *Trentman* (1891), 130 Ind. 16, 29 N. E. 405; *Lewis* v. *Albertson* (1899), 23 Ind. App. 147, 53 N. E. 1071. In the case last cited, the jurisdiction of a special judge was challenged below. The appellant there had appeared before the special judge and later filed demurrers and thereafter objected to his jurisdiction and at the same time asked for a continuance. "This," said the court, "was a waiver of the objection to the jurisdiction."

The action of the regular judge in hearing the application should, in our judgment, be given as much consideration as would be given the acts of a judge *de facto*, and the rule is that the acts of a judge *de facto* cannot be overthrown in a collateral attack, nor even in a direct attack, unless the objection is promptly made. *Cargar*

v. *Fee* (1889), 119 Ind. 536, 21 N. E. 1080; *Love* v. *Jones* (1920), 189 Ind. 390, 127 N. E. 549.

In *Ripley* v. *Mutual Home, etc., Assn.* (1900), 154 Ind. 155, 56 N. E. 89, an attempt was made on appeal to challenge the jurisdiction of the judge who had tried the case, no objection to his jurisdiction having been made in the trial court. And the court said: "It is settled in this State that the only questions not waived by a failure to present the same in the court below, and that can be presented for the first time on appeal, are that the complaint does not state facts sufficient to constitute a cause of action, and want of jurisdiction over the subject-matter of the action."

Since the sufficiency of a complaint to constitute a cause of action cannot now be challenged for the first time on appeal (*Jackson, Rec.*, v. *Rutledge* [1919], 188 Ind. 415, 122 N. E. 579; *Hedekin Land, etc., Co.* v. *Campbell* [1916], 184 Ind. 643, 112 N. E. 97), it follows that the only question which can now be presented for the first time on appeal is jurisdiction over the subject-matter. And it would seem that a question which cannot be presented on appeal should not be cause for holding a judgment void when attacked collaterally.

In *Tillman* v. *State* (1909), 58 Fla. 113, 50 So. 675, 138 Am. St. 100, 19 Ann. Cas. 91, the defendant on appeal contended that the trial judge "was without jurisdiction" to preside at the trial of the cause. In disposing of this matter, the court said: "The decided weight of authority is to the effect that where no objection to the authority or jurisdiction of the judge is made in the trial court and no action of any kind taken by the defendant toward raising such question, he will be deemed to have waived such privilege or right by his silence and will not be permitted to raise such question for the first time in the appellate court." Many authorities are cited in support of this statement, among which are *Schlungger*

v. *State* (1888), 113 Ind. 295, 15 N. E. 269; *Ripley* v. *Mutual Home, etc., Assn., supra; Crawford* v. *Lawrence* (1900), 154 Ind. 288, 56 N. E. 673; *Perry* v. *Pernet* (1905), 165 Ind. 67, 74 N. E. 609, 6 Ann. Cas. 533. For an extended note dealing with waiver of disqualification of judge, see 5 A. L. R. 1588.

Referring to the cases relied on for a reversal, it is sufficient to say they are cases where the question was first raised in the trial court and then on appeal. In *Stinson* v. *State, ex rel.* (1869), 32 Ind. 124, the special judge in vacation overruled a motion for a new trial. On appeal, the court said: "The ruling upon the motion for a new trial was made at a time when there was no power to act, and was void," and the cause was reversed for that reason. No other result could have been reached, as courts can only be held at the times designated by law, and business can only be lawfully transacted at a term held in accordance with the provisions of the statute on that subject. *Cain* v. *Goda* (1882), 84 Ind. 209.

We hold appellants waived any question as to the right of the regular judge to act on the application to modify the order of sale, and that they cannot in this action challenge the validity of the order made by the regular judge. As was said in *Turner, Sheriff,* v. *Conkey* (1892), 132 Ind. 248, 31 N. E. 777, 17 L. R. A. 509, 32 Am. St. 251: "It is quite clear that the refusal of a judge of a superior court to call in another judge does not destroy jurisdiction, although it may be a palpable wrong entitling the injured party to relief in a direct attack."

Judgment affirmed.

Dausman, J., absent.

## Dissenting Opinion.

Nichols, J.—I must respectfully dissent from the opinion of the majority so far as it holds that the regular judge, after a change had been taken from him because of his bias and prejudice, and a special judge had been appointed, was authorized to modify the order of sale rendered by the special judge. It does not appear that the special judge had declined to act, nor does it appear that there had been any consent that the cause might be remanded to the jurisdiction of the regular judge. It is my opinion that such regular judge was wholly without jurisdiction to make such change, that the amended order of sale was void, and that an injunction, therefore, lies to prevent a sale under such amended order.

In *Perkins* v. *Hayward* (1890), 124 Ind. 445, 24 N. E. 1033, there was a change from the regular judge and a special judge was chosen to try the case, and the court, speaking by Elliott, J., with reference to the authority of the regular judge, said: "When the regular judge yields the bench, calls in a special judge, and duly appoints him to try a designated cause, the special judge thus appointed acquires full authority over the cause throughout all of its stages, and the authority of the regular judge is necessarily excluded. In this instance, the regular judge could in no wise rightfully control or interfere with the proceeding of the special judge, for the latter was the sole and exclusive judge in the cause. He did not share power with the regular judge, for the authority of that judge was effectively excluded so far as concerned the particular case, and he could make no order affecting the case. It was for the special judge to determine whether the trial should continue until the end was reached, and this was not only his right but it was his duty under the law, for it declared by the statute that the special judge 'shall have power to hear and de-

termine said cause until the same is finally disposed of.' In our opinion the particular case where there is a special judge called in, with all its incidents from the beginning to the end, passes under the exclusive control and jurisdiction of the special judge, subject to revert to the control of the regular judge in the event that the special judge becomes incapacitated or refuses to act."

It is to be observed that the quotation above calls attention to the statutory provision that the special judge "shall have power to hear and determine said cause until the same is finally disposed of." By ch. 96, of the acts of 1905, Acts 1905 p. 164, as amended by ch. 81, of the acts of 1907, Acts 1907 p. 108, a different method of selecting special judges was provided for, but there was no repeal of this mandatory provision as to the continued and exclusive jurisdiction of the special judge over the particular case.

Not only is this the statutory law of the state, it is also the law as declared by our courts. We quote from *Pottlitzer* v. *Citizens Trust Co.* (1915), 60 Ind. App. 45, 108 N. E. 36, as follows: "When a special judge is regularly appointed and qualifies and assumes jurisdiction in a cause, he acquires full authority over the case throughout all its stages and the authority of the regular judge is necessarily excluded. The particular case in which such appointment is made, with all of its incidents from the beginning to the end, passes under the exclusive control and jurisdiction of the special judge."

As the majority opinion, *infra*, quotes from *Carr* v. *Duhme* (1906), 167 Ind. 76, 78 N. E. 322, we deem it advisable to examine the opinion in that case. We do not question the rule of law as quoted therefrom in the majority opinion as applied to the facts and circumstances there involved. But a rule of law must always be interpreted in the light of the facts to which it is to be applied. In the Carr case, the alleged want of jurisdiction

in the lower court was predicated on the palpable disqualification of a member of a board of commissioners, resting upon the assumption that his participation rendered the action of the board entirely void. The court, discussing this contention, says: "If the participation of an interested member of the board so affects its jurisdiction as to make its judgment void, then the invalidity can not be cured even by consent of the parties; but if such improper action is a mere irregularity or error rendering such proceedings voidable only, the then disqualification and consequent error may be waived by failure to make seasonable objection to the same."

It is the law, then, as declared by the Supreme Court, that the invalidity of a void judgment cannot be cured even by the consent of the parties, but if the improper action of the judge, or his appointment, is a mere irregularity, rendering such proceeding voidable only, then such disqualification and irregularity may be waived by acquiescense.

The court in the Carr case then states the common-law rule to be that the disqualification of a judge because of interest in the subject-matter brought before him did not affect his jurisdiction, and his acting in the cause was regarded as a mere irregularity or error, on account of which, a timely recusation would afford ground for a reversal on appeal.

The court then calls attention to the fact that there is no statute in this state relating to the disqualification of commissioners, and prohibiting them from serving in matters in which they are interested, and that their actions are, therefore, governed by common-law principles. It follows, of course, from the foregoing, that the act of a member of a board of commissioners who is interested in the subject-matter and of the board would not be void but voidable, and the court properly so held. But that case is readily distinguished from the instant case.

Here, after a special judge is appointed, both the statute and our decisions absolutely disqualify the regular judge from acting further and when he attempts so to act, he must be classified as a usurper, and his acts and judgments are absolutely void. As was said in *Horton* v. *Howard* (1890), 79 Mich. 642, 44 N. E. 1112, 19 Am. St. 198, as quoted in the Carr case, "The authorities are numerous, and nearly uniform, which hold that a judgment or decree rendered by a judge contrary to a statute like ours is void, and may be attacked collaterally." The Michigan statute is no more prohibitive than the statute and rule of law in this state.

The Carr case quotes with approval from Freeman, Judgments (4th ed.) §146, as follows: "But the general effect of the statutory prohibitions in the several states is undoubtedly to change the rule of the common law so far as to render those acts of a judge, involving the exercise of judicial discretion, in a case wherein he is disqualified from acting, not voidable merely, but void." It then states the rule to be that when constitutional or statutory provisions forbid a judge from acting officially, his action is regarded as transgressing the public policy of the state.

In *Board, etc.*, v. *Justice* (1892), 133 Ind. 89, 30 N. E. 1085, 36 Am. St. 528, the question involved was that of the validity of the action of a board of commissioners. One of them was disqualified because of interest, the same as in the Carr case, and, as in the Carr case, the action of the board was voidable and, no objection having been raised thereto at the proper time, it was held that such objection was waived. What was said in that case, as quoted in the majority opinion, was said with reference to the circumstances there involved.

In *Whitesell* v. *Strickler* (1906), 167 Ind. 602, 620, 78 N. E. 845, 119 Am. St. 524, the appointment of the special judge did not appear of record. There was no

challenge that he had not been appointed in some way. There being no objection under such circumstances to the special judge sitting or to the regularity of his appointment, the right to object was waived, the judgment being only voidable.

In the case of *Evans* v. *Rutherford* (1921), 76 Ind. App. 366, 371, 131 N. E. 55, a question involved was as to the regularity of the appointment of a special judge and it was held that it must be raised in the trial court or it is waived.

A judgment rendered by a special judge sitting under such circumstances is voidable only. So, in each and all of the long list of cases cited in the majority opinion. There being color or right to sit as judge, or it not appearing that the judge was, as here, disqualified, the only question involved was that of the regularity of the appointment. Under such circumstances, the judgment is voidable only, and any question as to the right of the judge to sit must be raised in the trial court. I do not question this rule, but it has no application to the facts of the case here involved. Here, it affirmatively appears that the regular judge had been excluded from all jurisdiction of the case and was wholly disqualified to act.

In *Case* v. *State* (1854), 5 Ind. 1, the court, speaking of the special judge, says he was no usurper, but supposed himself to be rightfully invested, and acted in good faith. This cannot be said of the judge who presumed to act in modifying the order of sale in the present case. He knew that he had been ousted from jurisdiction, and that he had no authority whatever to act.

In *Stinson* v. *State, ex rel.* (1869), 32 Ind. 124, an action was commenced in the common pleas court of Vanderburgh county, and a change of venue was taken from the judge, whereupon the case was set down for trial before the judge of the Vanderburgh Circuit Court,

but, in the common pleas court, where a trial was had which resulted in a finding for appellee. A motion for new trial was filed, and the judge of the circuit court, his court being in session, overruled the motion and rendered judgment. It was held that the case still remained in the common pleas court, that it could only be acted on during a session of that court, and that the ruling on the motion for a new trial was made at a time when there was no power to act, and was void. In this case, the regular judge ruled when he had no power to act and his action was therefore void.

It was stated in the majority opinion, as originally prepared, that the regular judge was at least a *de facto* judge, and that, therefore, his acts were only voidable, but I do not so understand the law. In order to be a *de facto* judge, there must be a regularly constituted office, and a vacancy therein, before one appointed or elected to fill such office shall be denominated a *de facto* judge. *Caldwell* v. *Barrett* (1903), 71 Ark. 310, 74 S. W. 748, 750.

There was no vacancy here to be filled. It does not appear that the special judge was not ready to act in the case to which he had been appointed, nor that he would not have so acted had he been given opportunity so to do.

A *de facto* officer is one who exercises the duties of an office under claim and color of title, being distinguished on the one hand from a mere usurper, and on the other from an officer *de jure*. In this case, the regular judge did not and could not claim that he was exercising the duty which he presumed to perform under claim or color of title. He was absolutely disqualified of record. He was excluded from the jurisdiction of the case. He can only be classified as a usurper.

An officer *de facto* is one who comes in by the terms of law, and acts under a commission for election apparently valid but, in consequence of some illegality or incapacity or want of qualification, is incapable of lawfully holding

the office. The distinction between a usurper and an officer *de facto* is that the former has no color of title to the office, while the latter has, by virtue of some appointment or election. *Fitchburg R. Co.* v. *Grand Junction, etc., R. Co.* (1861), 83 Mass. (1 Allen) 552, 557. In this case, by the terms of the law, the regular judge was excluded. In this case, the regular judge had no color of title to the office which he presumed to fill.

An officer *de facto* is one who executes the duties of an office under some color of right—from pretense of title—either by election or appointment. There must be a fair color of right or an acquiescence of the public in his official acts so long that he may be presumed to act as an officer by right of election or by appointment. *State* v. *Quint* (1902), 65 Kans. 144, 69 Pac. 171.

"The essential to the creation of an officer *de facto* is that his incumbency should not be legal, but that it should be exercised by some election or appointment attempted as of legal right, but invalid for want of power in the appointing body, or because of a defect in the election." And an officer so elected or appointed actually in possession of the office exercising its functions and acting under color of title, which means an apparent right to the office, is an officer *de facto*. *Coquillard Wagon Works* v. *Melton* [1910], 137 Ky. 189, 125 S. W. 291, 292.

Under this definition of a *de facto* officer, the regular judge of the Grant Circuit Court had but one qualification, and that was that his incumbency was not legal.

Under these authorities and numerous other authorities that might be cited, it is apparent that the regular judge of the Grant Circuit Court was not even a *de facto* judge, that he must be classed in the role of a usurper, that, as such, his acts were absolutely void, and, therefore, subject to collateral attack.

Since the original opinion of the majority of the court

to which this dissenting opinion was addressed, there appears to be some disposition to hedge, in that, while the original majority opinion held that the regular judge was at least a *de facto* judge, it is now held, without holding that he was a *de facto* judge, that his acts should be given as much consideration as a *de facto* judge. But, as it appears to me, this is but an attempt to dodge the issue. If the one who presumed to act was not a *de facto* judge, he could not be authorized to imitate one. The fact still remains that he had been excluded from all jurisdiction and authority, and his attempted rulings were absolutely void. The safe course for our courts to pursue, if they would hold the confidence and respect of the people, is to adhere strictly to the mandates of the law, without attempting in any way to sidetrack its plain provisions.

## ON PETITION FOR REHEARING.

McMAHAN, J.—The statute provides that when an administrator files his petition for the sale of the real estate of his decedent, he shall cause an appraisement of the real estate to be made, which appraisement shall be filed in court on or before the hearing of the petition. Acts 1881 (Spec. Sess.) p. 423, §120, §3192 Burns 1926. Section 128 of the same act, §3200 Burns 1926, provides that, previous to the making of an order for the sale of real estate, the administrator shall file a bond in double the appraised value of the real estate ordered sold.

While the complaint in the instant case alleges that no appraisement of the real estate was made and filed until long after the original order of sale was made, there is no evidence to sustain this allegation.

There is no evidence as to whether an appraisement was or was not filed at the time of or prior to the hearing of the petition to sell and the entering of the

order of sale. The petition for the sale of the real estate, the cross-complaint filed in that proceedings, all the other pleadings therein, together with certain entries and orders of the court, including the decree ordering the real estate sold, were introduced in evidence. No appraisement was introduced in evidence, but there is no evidence from which it can be inferred that the papers and entries so introduced in evidence were all of the papers filed or that all of the entries in the cause had been introduced in evidence. With this condition of the record in mind, we said: "If the filing of an appraisement was necessary, as appellants contend, to give the court jurisdiction to make the order of sale, we ought, in the absence of any evidence, presume that the jurisdictional steps had been taken and that an inventory had been filed." The appellants had the burden of proving the invalidity of the order of the court directing the sale of the real estate. In this, they failed. The Grant Circuit Court is a court of general jurisdiction in the administering of estates, and every necessary fact not negatived by the record is presumed in favor of the judgment, and if necessary to support an order of sale of the decedent's lands, it will be presumed, on collateral attack, that the proper appraisement was filed. See *Hall* v. *Ewing* (1920), 149 Ga. 693, 101 S. E. 807.

Section 3220 Burns 1926, Acts 1881 (Spec. Sess.) p. 240, §612, provides that no sale of any real estate by an executor, administrator, or guardian shall be avoided on account of any irregularity or defect in the proceedings if it shall appear: (1) That the sale was authorized by the court having jurisdiction of the parties and the subject-matter; (2) that bond was given as required by law; (3) that notice was given as provided by law; and (4) that the premises were sold accordingly and are held by or under one who purchased in good faith.

The administrator in the instant case, being a trust

company, was not required to give a bond. §3955 Burns 1926, Acts 1913 p. 567, §2, amending §14 of acts 1893. The failure of a guardian to file a bond as required by §3397 Burns 1926, Acts 1891 p. 80, amounts to no more than an irregularity and does not render a sale by the guardian void. *McKeever* v. *Ball* (1880), 71 Ind. 398; *Davidson* v. *Bates* (1887), 111 Ind. 391, 12 N. E. 687. See, also, *Maple* v. *Shoyer* (1839), 1 Blackf. (Ind.) 561.

In Kentucky, where the Civil Code practice requires a bond to be given before judgment shall be rendered against a defendant constructively summoned, it has been held that the failure to give the required bond did not render the judgment void, but simply erroneous. *Oldham* v. *McElroy, Sheriff* (1909), 134 Ky. 454, 121 S. W. 414; *Bethel College* v. *Gladdish* (1924), 204 Ky. 10, 263 S. W. 659.

Conceding, without so deciding, that appellants are correct in their contention that the filing of an appraisement is a jurisdictional step necessary to give the court authority to order the sale of real estate by an administrator, we hold that appellants have failed to prove a failure to file such an appraisement.

For cases bearing upon a collateral attack upon a court having general jurisdiction over a subject-matter, see *Crossley* v. *O'Brien* (1865), 24 Ind. 325, 87 Am. Dec. 329; *Spaulding* v. *Baldwin* (1869), 31 Ind. 376; *Argo* v. *Barthand* (1881), 80 Ind. 63; *City of Delphi* v. *Startzman* (1885), 104 Ind. 343, 3 N. E. 937; *Evansville Ice, etc., Co.* v. *Wisner* (1897), 148 Ind. 682, 48 N. E. 592; *Bruce* v. *Osgood* (1900), 154 Ind. 375, 56 N. E. 25; *Driver* v. *Driver* (1899), 153 Ind. 88, 54 N. E. 389; *Wills* v. *Wills* (1911), 176 Ind. 631, 96 N. E. 763; *Stone* v. *Elliott* (1914), 182 Ind. 454, 106 N. E. 710.

Rehearing denied.