WILLIE GORDY *v.* STATE OF INDIANA.

[No. 871S242. Filed August 1, 1974.]

*Max Cohen,* of Gary, for appellant.

*Theodore L. Sendak,* Attorney General, *A. Frank Gleaves, III,* Deputy Attorney General, for appellee.

PRENTICE, J.—The defendant (appellant) was convicted in a jury trial of Second Degree Murder under an indictment charging First Degree Murder. He was sentenced to life imprisonment. This appeal makes no challenge to the sufficiency of the evidence, hence we will not burden this record with a recital of the facts.

We are here concerned with: (I) four issues concerning jury instructions, (II) the court's ruling denying a motion for mistrial for prosecutorial misconduct, (III) the effect of the submission to the jury of a "death penalty" verdict form, the case having been tried before *Furman* v. *Georgia* (1972), 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 and *Adams* v. *State* (1972), 259 Ind. 164, 284 N.E.2d 757, and (IV) the effect, if any, of a commissioner's having served as judge at the trial. 　　　　* 　* 　*

ISSUE I—Instructions:

(1)　The trial court's fifteenth instruction dealt with the elements of first degree murder and properly advised that

to be murder in the first degree it must be established, beyond a·reasonable doubt, that the killing was unlawful and done with premeditated malice. The instruction continued, "Malice may be implied or presumed from the nature of the act, as where an act resulting in death of another is done purposely, in a state of cool blood, without excuse or justification; therefore, malice may be implied when it is shown that the killing was done purposely and without a legal excuse or unreasonable provocation, also from the intentional use of a deadly weapon in such a manner as was likely to and did produce death; also from any deliberate and cruel act against another, however sudden, which shows an abandoned and wicked heart. The presumption of malice is rebuttable and is removed by facts tending to show, or which do show excuse or justification for such act, and when this presumption or inference of malice fails, then you must look to all the facts and circumstances of the case to determine whether malice existed or not."

The defendant's objection was that the instruction permitted the jury to presume malice from the nature of the act and relieve the State of the burden of proof, beyond a reasonable doubt, a material fact of the indictment and of the lesser included offense of murder in the second degree and further that it cast upon the defendant the burden of coming forward with evidence to negate the erroneous presumption of malice.

Defendant has cited us to a number of cases distinguishing between an inference and a presumption. *Cleveland, etc., R. Co.* v. *Lynn* (1911), 177 Ind. 311, 95 N.E. 577, 98 N.E. 67; *Zearing* v. *Walters* (1954), 125 Ind. App. 202, 122 N.E.2d 625; *Kaiser* v. *Happel* (1941), 219 Ind. 28, 36 N.E.2d 784. It appears that in earlier cases the two terms were used interchangeably, whereas more recently we have reserved the word "presumption" to denote matters of law and the word "inference" to denote matters of fact. Defendant urges the recent case of *Young* v. *State* (1972), 258 Ind. 246, 280 N.E.2d 595 to support his contention that the word "presumption"

in the instruction placed a burden upon him to prove the absence of malice. In *Young* v. *State, supra,* we were dealing with insanity as a defense, and we held that sanity is presumed, in the absence of the defendant presenting some evidence to the contrary. Thus, by the use of the word "presume" or "presumption" some slight burden is placed upon a defendant pleading insanity. The *Young* case, however, dealt with the function of the presumption and the extent of the defendant's burden created by it. It did not deal with the distinctions drawn between the words "presumption" and "inference."

The instruction could have better omitted the word "presumed" in the first instance and used the word "inference" thereafter in lieu of the word "presumption." However, the first use of the term complained of was "malice may be implied or presumed * * *." Later the word "presumption" was used in the disjunctive with the word "inference." It is clear to us that the words "imply", "inference", and "presumption" were to be understood as synonyms, and we see nothing about the instruction that would misinform the jury as urged by the defendant. This is particularly true when we view the instruction in context with the other instructions regarding the burden of proof.

(2)   The third instruction advised of the lesser included offenses of first degree murder, and the trial court properly refused to include assault and battery with intent, assault and battery and assault. This is well established by *Barker* v. *State* (1958), 238 Ind. 271, 150 N.E.2d 680; *Shack* v. *State* (1972), 259 Ind. 450, 288 N.E.2d 155; and *Gatchett* v. *State* (1973), 261 Ind. 109, 300 N.E.2d 665. *Sullivan* v. *State* (1957), 236 Ind. 446, 139 N.E.2d 893 is inapplicable, because here there was no charge of manslaughter.

(3)   The thirteenth instruction dealt with accomplice testimony, and the defendant objected to it because it did not advise the jury that testimony of an accomplice should be weighed with great care. Additionally, the defendant re-

quested and was refused cautionary instructions advising that the testimony of informers and of persons who have been convicted of crimes must be examined with greater care than that of ordinary witnesses.

We find no error in the refusal of such instructions and reaffirm our position taken in *Turner* v. *State* (1972), 258 Ind. 267, 280 N.E.2d 621 and *Cherry* v. *State* (1972), 258 Ind. 298, 280 N.E.2d 818.

(4) By pre-trial stipulation, the State had provided the defendant with copies of the statements of the witnesses it intended to call. Two of such witnesses were subpoenaed by neither the State nor the defendant and did not appear at the trial. The defendant requested and was refused the following instruction:

> "You are instructed that where a party has a witness under his or its control and fails to produce that witness on the trial, you may infer that, if the witness under the control of the party had testified, that testimony would be unfavorable to the party who failed to produce him."

The defendant admits that a defendant is not generally entitled to such an instruction when the State fails to produce a witness but submits that he was so entitled in this case, because of the State's prior indication that the witnesses would be called. We do not agree. The defendant had copies of the statements of such witnesses. If such statements were favorable to him, it was his responsibility to call them. There is nothing in the record to indicate that the witnesses were either available or unavailable. Neither is there anything in the record to indicate that the witnesses, if available to the State, were not equally available to the defendant. He made no claim of surprise nor did he request a continuance in order to subpoena such witnesses.

ISSUE II. The defendant was charged jointly with one Jones, but their trials were separated. As previously mentioned, the prosecutor and defense counsel had by pre-trial agreement, agreed that the State would provide the defendant

with the statements of all State's witnesses whom it proposed to call at the trial. Such statements were provided, but none from Jones was included. Following the testimony of the defendant in his own behalf, the defendant rested his case. In rebuttal, the State called Jones to the stand. Jones had but identified himself by name, when the defendant objected to his being permitted to testify in view of the stipulation, which objection was sustained. The defendant then moved for a mistrial for prosecutorial misconduct in calling Jones in violation of the agreement and thereby compelling the defendant to object in the presence of the jury.

It appears that the objection may have been improperly sustained, inasmuch as Jones was offered only as a rebuttal witness; however that is not the question that we are called upon to decide. It is difficult to perceive how the prosecuting attorney could have prejudiced the defendant's case merely by calling Jones as a witness. If the defendant was genuinely surprised by Jones' appearance, his proper remedy was to seek a continuance; and indeed, before his objection was sustained, the defendant's counsel alternatively requested a continuance. The jury was informed that Jones was a co-defendant not by the prosecuting attorney but by defense counsel. The information was imparted to the jurors, because neither the defense counsel nor the prosecutor had requested that arguments with respect to the motion be held outside the hearing of the jury. Furthermore, it has not been made clear to us that the prosecuting attorney knew or should have known that the testimony of Jones would be inadmissable. His testimony was relevant as rebuttal evidence, inasmuch as he was with the defendant at the time the crime was committed. We doubt that the pre-trial agreement to give copies of the witnesses' statements could have been intended to include statements from rebuttal witnesses, because at that stage of the proceedings it would be difficult, if not impossible, to know what the rebuttal evidence would be.

We perceive no harm to the defendant by the mere calling

of the witness Jones to the witness stand. The situation was somewhat analogous to those in *Wright* v. *State* (1972), 259 Ind. 197, 285 N.E.2d 650 and *Hollars* v. *State* (1972), 259 Ind. 229, 286 N.E.2d 166. In those cases we found no error.

Even if we were to hold that the prosecuting attorney knew that the testimony of Jones would be inadmissible, we do not agree that the mere calling of him to the witness stand amounted to prejudicial error of the magnitude requiring the declaration of a mistrial. It is well settled that the granting of a motion for mistrial rests largely within the sound discretion of the trial court. *Lolla* v. *State* (1973), 260 Ind. 221, 294 N.E.2d 798; *White* v. *State* (1971), 257 Ind. 64, 272 N.E.2d 312; *Duke* v. *State* (1968), 249 Ind. 466, 233 N.E.2d 159.

ISSUE III. Defendant's third contention is that he suffered reversible error when the trial court submitted to the jury a verdict form which would have permitted them to assess the death penalty. The only authority submitted by Defendant to support this contention is *Furman* v. *Georgia, supra.*

In *Furman,* the United States Supreme Court held that the "imposition and carrying out of the death penalty * * * constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments." 33 L. Ed. 2d at 350.

The impact of this decision in Indiana has been made clear in *Adams* v. *State, supra.* In the original opinion by this Court in *Adams,* the death penalty was ruled constitutional. (271 N.E.2d 425). In light of *Furman,* this Court granted a petition for rehearing in Adams, and remanded the case "to the trial court with directions to vacate its sentence imposing the death penalty *and in lieu thereof impose a life sentence on the appellant."* (Emphasis added). (284 N.E.2d at 757). It is therefore clear that this Court holds that *Furman* applies only with respect to the sentence involved and does *not* go to the validity of the conviction.

▪ISSUE IV. The defendant's trial was conducted by a Commissioner appointed pursuant to Burns Ind. Stat. Ann. §§ 4-5741 and 4-5742 (Acts 1965, ch. 43, §§ 1 and 2), the same being IC 33-9-7-1 and 33-9-7-2. Acting as judge of the court, he presided at the trial, received the verdict, entered the judgment of conviction and pronounced the sentence. The record does not disclose whether or not the Commissioner was ever formally qualified as a judge pro tempore or as a special judge, which the statute authorizes. Although the defendant made no objection at the trial and made no such claim of error in his motion to correct errors, he now seeks a reversal by reason of the Commissioner's role in the proceedings. To support his position, he has cited us only to cases wherein we have held that subject matter jurisdiction may not be waived and may be raised for the first time on appeal. We agree that subject matter jurisdiction may be raised for the first time on appeal. *Wedmore* v. *State* (1954), 233 Ind. 545, 122 N.E.2d 1; *Cooper* v. *County Board of Review of Grant County* (1971), 150 Ind. App. 232, 276 N.E.2d 533; *State of Florida ex rel. O'Malley* v. *Department of Insurance* (1973), 155 Ind. App. 184, 291 N.E.2d 907; 1 Harvey, Indiana Practice, 604-612. However, the qualifications of a judge and his authority to act in a given case are not determinative of subject matter jurisdiction. We look instead to the court in which the matter was tried to determine if there is subject matter jurisdiction. Defendant does not contend that the Lake Criminal Court did not have jurisdiction of the class of cases to which this one belongs.

A similar issue was considered by our Appellate Court in *Jordan* v. *Indianapolis Coal Co.* (1913), 52 Ind. App. 542, 544-545, 100 N.E. 880:

"The assignment of errors presenting this question is grounded on the proposition that the trial court had no jurisdiction to render the judgment from which this appeal is taken. The position of appellant on this proposition cannot be maintained. It is not contended that the Superior Court of Marion County did not have jurisdiction of the

class of cases to which this one belongs; and its jurisdiction of the person of appellant is not questioned. It is therefore apparent that the court had jurisdiction of the subject-matter of the action and of the person of appellant, and had power to proceed to judgment. The defect pointed out was not affecting the jurisdiction of the court, but the right and authority of its presiding judge to act as such. The judge who presided at the trial of this case was acting under color of authority, and he was a judge de facto if not a judge de jure.

"It has been held repeatedly by this court and the Supreme Court that when a judge has been called or an attorney appointed to try a cause, and no objection is made at the time, or to his sitting in the cause when he assumes to act, all objections thereto will be deemed waived on appeal. Perry v. Pernet (1905), 165 Ind. 67, 74 N.E. 609, 6 Ann. Cas. 533; Crawford v. Lawrence (1900), 154 Ind. 288, 56 N.E. 673; Lillie v. Trentman (1891), 130 Ind. 16, 29 N.E. 405; Lewis v. Albertson (1899), 23 Ind. App. 147, 53 N.E. 1071. We see no reason why the rule announced and applied to special judges should not apply with equal force to a judge pro tempore."

Such a rationale is equally applicable to the case at bar. Even if the Commissioner's assertion of authority was improper in this case (a proposition we need not address in this appeal), Defendant's conviction may not be set aside. The Commissioner did not merely usurp this authority and set up a mock court. He heard the case in the Lake Criminal Court, which clearly had jurisdiction over the subject matter as well as over the person of Defendant. The Commissioner was acting as judge, a duty he clearly may assume under the statute if his appointment is procedurally correct. Both parties submitted to his authority as a judge and neither questioned this authority until this appeal was initiated. Thus, he was operating under color of authority, and served as a judge de facto if not as a judge de jure. His authority as a judge de facto may not be raised on appeal for the first time. *Evans* v. *Rutherford* (1921), 76 Ind. App. 366, 371, 131 N.E. 55. *Perry* v. *Pernet* (1905), 165 Ind. 67, 70, 74 N.E. 609; *Lillie* v. *Trentman* (1891), 130 Ind. 16,

20-21, 29 N.E. 405; *Crawford* v. *Lawrence* (1900), 154 Ind. 288, 290, 56 N.E. 673; *Pattison* v. *Hogston, Admr.* (1927), 90 Ind. App. 59, 68, 157 N.E. 450, 158 N.E. 516; *Wallace* v. *Village of Manchester* (6th Cir. 1970), 434 F.2d 241, 242; *Norton* v. *County of Shelby* (1886), 118 U.S. 425, 441-442, 6 S. Ct. 1121, 1125, 30 L. Ed. 178.

The judgment of the trial court is affirmed.

Arterburn, C.J., Givan and Hunter, JJ., concur; DeBruler, J., concurs in result.

NOTE.—Reported at 315 N.E.2d 362.