**Glen D. SURVANCE, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 2–882A225.

Court of Appeals of Indiana, Second District.

Sept. 27, 1983.

Rehearing Denied Nov. 14, 1983.

Wilson L. Tow, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., of Indiana, Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

Glenn D. Survance (Survance) appeals his conviction of conspiracy to commit arson under I.C. 35–41–5–2 (Burns Code Ed., Repl.1979) and I.C. 35–43–1–1(a)(1) and (c) (Burns Code Ed., Repl.1979). Because of our disposition of this case, we limit our review to the issue of the sufficiency of the evidence to support the conviction.

We reverse.

Survance's challenge to the sufficiency of the evidence to support his conviction is multipronged. However, our agreement with one of his arguments obviates our need to reach the others. Survance claims the State failed to prove he possessed the requisite intent to commit arson, the underlying felony, and failed to prove an agreement to commit arson. Survance argues the evidence at most shows an agreement

between Survance and another person to "destroy" a mobile home, not an agreement to damage or destroy it specifically "by means of fire or explosive" as required by the arson statute, I.C. 35–43–1–1. We agree and therefore reverse Survance's conviction for conspiracy to commit arson.

Viewing the evidence most favorably to the State, as we must on a sufficiency review, the record shows that in October or November, 1978, Survance, the owner of a mobile home sales and service business telephoned his employee, Earl W. Nave (Nave), asking to see him.[1] As to the subsequent in-person conversation between Survance and himself, Nave testified, "I don't recall the total conversation. Basically he had a home in Shelbyville, Indiana he wanted destroyed. I agreed to do it." Record at 419. Nave did not remember the precise date of the conversation. Nave believed Survance said to go during the day because no one would be home but Survance did not say why he wanted the home destroyed.

Survance gave Nave a hand-drawn map and a key to the trailer door. Nave agreed to do the job for $500. Within a week or two of the conversation, Nave drove to Shelbyville and started the home on fire using an accelerant and fuses made from a match book and cigarette. He threw away the map and key and called Survance, telling him he was "finished with what [he] had started." Record at 427. Nave was never paid the $500 but assumed Survance deducted it from money he owed Survance.

The record is replete with evidence of Survance's motive for desiring destruction of the mobile home for insurance purposes. The home had been plagued with defects and difficulties, some electrical in nature, and the homeowner had withheld all payments pending correction of the problems. Advance Mortgage Company, the company to whom Survance assigned the installment contract for the purchase of the home, was

---

1. The State's case consisted largely of Nave's testimony. Although Nave's veracity was certainly open to question, the jury was made aware of his criminal history, the plea bargain, and the benefits thereby flowing to him in exchange for his testimony. The jury was in a better position than we to pass upon his credibility and apparently chose to believe Nave. Regardless of how strongly Survance urges us, we cannot say no reasonable person would have reached that conclusion. *Bentley v. State,* (1981) Ind., 414 N.E.2d 573.

threatening the homeowner with repossession; the homeowner was threatening rescission of the contract.

Survance's assignment of the installment contract to Advance was with recourse. Upon repossession of the home, Survance would be liable to Advance for the buyer's unmade payments. The insurance, which was required by Advance, was issued by Foremost Insurance Company, Glen Survance, agent. Survance received a commission for the sale of the policy. The policy, among its other coverages, provided coverage for the actual cash value of the mobile home and coverage for the personal effects of the homeowner. When the home burned, Foremost Insurance Company paid the homeowner approximately $5,200 for loss of his personal belongings and paid Advance approximately $14,000, the actual cash value of the home. One of Survance's corporations subsequently purchased the burned home as salvage from Advance.

■ The elements of conspiracy are 1) an agreement with another person to commit the underlying felony, 2) the intent to commit the felony, and 3) an overt act in furtherance of the agreement. I.C. 35–41–5–2. A conspiracy may be proven by either direct or circumstantial evidence. *Woods v. State*, (1980) Ind., 413 N.E.2d 572, 573; *Williams v. State*, (1980) Ind., 409 N.E.2d 571, 573. Pursuant to the statutory requirement that the State allege and prove one of the persons performed an overt act in furtherance of the agreement, the information alleges Survance performed an overt act by giving Nave a description of the mobile home, a key, and directions to the site while instructing him to damage the dwelling "by fire".

■ As distinguished from other offenses against property, arson is an offense committed by specific means against property. The means provided in the statute are "fire or explosive". I.C. 35–43–1–1(a). Therefore, although a conspiracy to commit murder, for example, need not include proof of agreement as to the specific method to be used, a conspiracy to commit arson must include proof of an agreement to damage the property of another by means of fire or explosive. Here, pursuant to the information, the State must prove Survance agreed with Nave to damage the mobile home belonging to Ronald Gilly by means of fire. Such proof is lacking.[2]

■ The State need not show a formal arrangement or the use of particular words to prove an agreement but must show an accord "in the sense of a common purpose and understanding, to commit the intended felony, by joining at its foundation or by participating in it after it has been formed." *Williams v. State*, 409 N.E.2d at 573. The existence of the agreement may be inferred from the conduct of the parties or proved by circumstantial evidence but cannot be inferred from commission of the criminal act alone or from commission of the overt act alone. *Woods v. State*, 413 N.E.2d at 573.

Here, the State proved Survance's commission of the overt act of supplying Nave with the key and a map to the mobile home site and, through Nave's testimony, proved an agreement between Survance and Nave to "destroy" the home. The State argues this evidence is sufficient to support a reasonable inference that Survance intended Nave to leave the home a total loss for insurance purposes. Therefore, the State contends it is "quite logical to infer that the parties conspired to commit arson". Appellee's brief at 9. This contention does not advance the State's case.

■ Although burning is perhaps the most logical way to destroy the interior of a mobile home, we are aware that alternate

**2.** In addition, to establish a conspiracy the State must prove the defendant possessed the intent to commit the underlying offense. Thus, pursuant to the information, the State must further prove Survance intended to damage the mobile home by means of fire. The State also failed to meet its burden of proof on this element for the same reason it failed to meet its burden on the agreement element. *See United States v. Dumas*, (10th Cir.1982) 688 F.2d 84 (reversal of conviction for conspiracy to obtain possession of controlled substance by misrepresentation, fraud, forgery, deception or subterfuge for lack of proof of intent to commit underlying felony).

methods of property destruction exist, although they may be less likely to be used by one not wishing his criminal activities to be discovered. *See United States v. Dumas,* 688 F.2d 84 (existence of alternative methods of procurring controlled substances). In any event, the fact an inference is the most "logical" one which can be made does not necessarily mean it is a legally reasonable inference from the evidence presented so as to comprise substantial proof of probative value from which a reasonable trier of fact can conclude guilt beyond a reasonable doubt. The most "logical" inference may nevertheless be mere speculation.

Survance's overt act of supplying the key and map does not indicate the agreement was to destroy the home by the specific method of fire as opposed to some other method. Therefore, the only evidence shown by the State which tends to indicate the agreement was to destroy *by fire* is Nave's testimony he committed the criminal act of setting the home ablaze. That evidence, by itself, is not sufficient to infer an agreement between Survance and Nave to commit the criminal act. *See Woods v. State,* 413 N.E.2d 572.[3] Additional evidence, albeit circumstantial, is necessary before a fact finder can reasonably infer Survance and Nave agreed to damage the mobile home by fire as opposed to some other means.

Examples of the required evidence other than the commission of the act of setting the home ablaze may have consisted of proof of Survance's knowledge Nave was an arsonist,[4] proof Survance provided Nave with supplies necessary to start a fire or money to procure them, or proof Survance provided Nave with advice on how or where within the home to set the fire. Similarly, evidence the insurance coverage was limited to damage by fire might have supplied sufficient other evidence from which the fact finder could reasonably infer the agreement "to destroy" was an agreement to destroy by means of fire.

■ As in all criminal cases, the State here bore the burden of proving the elements of the crime charged beyond a reasonable doubt. Survance was charged with conspiracy to commit arson. Although the evidence is sufficient to show Survance was guilty of a conspiracy,[5] it is our opinion he was either charged with conspiring to commit the wrong felony or, if charged with conspiring to commit the correct felony, the State failed to meet its burden of proof as to that felony beyond a reasonable doubt.

Judgment reversed.

BUCHANAN, C.J., and SULLIVAN, J., concur.

---

3. In *Woods,* the Supreme Court reversed a conviction for conspiracy to commit battery with a deadly weapon, holding although there was evidence of agreement to brawl and evidence of the occurrence of a brawl in which deadly weapons were used (and therefore, we presume, the requisite intent to brawl using deadly weapons) there was no evidence of an agreement or concurrence of sentiment concerning the use of deadly weapons. *Woods* differs from Survance's case factually in that the court in *Woods* found an intervening force between the agreement (to flee and enlist reinforcements) and the "spontaneous attack by the defendant, followed immediately by the others." 413 N.E.2d at 577. The facts in Survance's case do not show any intervening force between the agreement to destroy and Nave's destruction of the home by fire. Rather, the problem in Survance's case is a lack of proof as to the terms of agreement which, because of the definition of arson, must include the particular means to be used. Nevertheless, the principle stated in *Woods,* that the agreement in a

conspiracy case may not be proved beyond a reasonable doubt solely by commission of the criminal act or overt act, applies with equal force to Survance. In fact, the proof in Survance's case may deserve more careful examination because Survance did not directly participate in the criminal act of setting the fire whereas the defendant in *Woods* did actively participate in the brawling with a deadly weapon.

4. The only evidence in the record is that Survance had heard rumors of what Nave "was involved in". Record at 871, 899.

5. At the time of the incident I.C. 35–43–1–2 (Burns Code Ed., Repl.1979) made criminal mischief, the reckless, knowing, or intentional damaging of the property of another without his consent, a class D felony, rather than a misdemeanor, and therefore a crime capable of supporting a conspiracy charge if the pecuniary loss is at least $2,500.