Glen D. SURVANCE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 784S264.

Supreme Court of Indiana.

July 6, 1984.

Rehearing Denied Sept. 10, 1984.

Wilson L. Tow, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

This cause is before us upon the petition of the State of Indiana to transfer it from the Court of Appeals, Second District, that court having reversed the conviction of Defendant (Appellant) in the Criminal Court of Marion County by a decision and opinion published at 454 N.E.2d 430.

 The aforesaid decision contravenes ruling precedents of this Court holding that courts of appeal may not reverse the judgment of conviction of a trial court upon the evidence if, from the evidence favorable to the State and all reasonable inferences to be drawn therefrom, the existence of each element of the crime may be found, beyond a reasonable doubt. *Loyd v. State*, (1980) 272 Ind. 404, 398 N.E.2d 1260; *Baum v. State*, (1976) 264 Ind. 421, 345 N.E.2d 831. Transfer is, therefore, granted, and the decision and opinion of the Court of Appeals is now ordered vacated.

Defendant was convicted, in a trial by jury, of conspiracy to commit arson, Ind. Code § 35-41-5-2 (Burns 1979). This case presents eight (8) issues for review:

1. Was the evidence sufficient to sustain the verdict?

2. Must the verdict be vacated by reason of the incapacity of the presiding judge to serve?

3. Did the trial court err in not providing the jury, at its request during delibera-

tions, with a copy of a specified portion of a witness' testimony?

4. Did the trial court err in refusing to instruct the jury upon the degree of persuasive force of circumstantial evidence required to support a conviction?

5. Was the testimony of Defendant's co-conspirator inherently unreliable and, hence, of no probative value?

6. Did the court err in permitting a witness to testify notwithstanding a possible violation of a witness separation order?

7. Was Defendant's trial conducted so hurriedly as to have denied him due process of law?

8. Did the trial court commit fundamental error in sentencing the Defendant to a term of imprisonment for ten years and suspending seven years thereof?

## ISSUE I

The evidence favorable to the verdict revealed that in October or November, 1978, Defendant was the owner of a mobile homes sales and service business and Earl W. Nave was in his employ. He summoned Nave by telephone to come and see him in his office, which Nave did. At that meeting, Defendant told Nave that he had a home in Shelbyville which he wanted "destroyed." He gave no reason for such desire, but Nave agreed to "do it" for $500. Thereupon, Defendant drew a map for Nave's use in finding the home, gave him a key to it and told him that it would be better to go during the day, as no one would then be at home. Within a week or two following that conversation, Nave drove to the house in one of Defendant's business vehicles, set fire to the home and then returned to Indianapolis and notified Defendant that "I was finished with what I had started."

The mobile home that was destroyed had been purchased by Ronald Gilles and his wife from the Defendant's corporation, on March 3, 1978, under an installment contract, which provided, among other obligations of the purchasers, that they would keep the home insured "against such risks and in such amount as the Seller may from time to time require and with such insurers as Seller may from time to time approve" with losses payable to the Seller, for application to any unpaid balance under the contract.

Defendant's corporation assigned its interest in the installment contract to Advance Mortgage Company, with recourse, in keeping with their customary business practices, and a policy of insurance was issued by Defendant, as agent for Foremost Insurance Company, to cover the actual cash value of the home.

The home was delivered to the Gilleses' rented site in Shelby County a few days subsequent to the sale, and the Gilleses moved into it. From the beginning, however, serious defects appeared in it, including roof leaks and an electrical short circuit that would occasionally cause one to be shocked severely upon touching the metal exterior of the home. Numerous complaints by the Gilleses to Defendant's office produced no satisfactory results. Whereupon they determined that they would not make the monthly payments for which they were obligated under the contract until the home was satisfactorily repaired. By July 19, Advance was threatening to repossess the home and the Gilleses were demanding that the contract be rescinded and their down payment of $1500 be refunded to them.

In all, Mr. Gilles telephoned the Defendant's office 12 to 15 times and discussed his complaints with Defendant personally on 10 or 12 such occasions. Defendant continuously advised Gilles that the problems would be taken care of, but they were not. In July, Gilles received a letter and a telegram from Charles Roy, on behalf of Advance Mortgage Co., each demanding that he vacate the home by July 27, and by August 9, respectively.

Shortly before August 8 and following receipt of one of the aforesaid notices to vacate, Gilles telephoned Defendant. A heated discussion took place between them, with Defendant insisting that the home was being repossessed for nonpayment of

the installments, none of which had been paid, and Gilles advising that he had all the money due and would pay it when the home was properly repaired. Defendant said that he would come with a representative of the company and take care of it. Gilles did not know whether Defendant was then referring to a representative of the mortgage company or of the manufacturer of the home. In any event, no one came.

Both the operating contract between Advance and the Defendant's corporation and the assignment to Advance of the Gilleses' contract by Defendant's corporation rendered the corporation liable for defaults of the Gilleses upon the installment contract, and Defendant was aware of this contingent liability. Defendant testified, however, that although he had repossessed some homes under this arrangement, he had never been required to do so or to repay the loan proceeds to the mortgage company.

Following the burning of the home in the early afternoon of November 6, 1978, the Foremost Insurance Company paid the actual cash value of the home, approximately $14,000, to Advance Mortgage, in accordance with the provisions of the aforementioned insurance policy; and in January of 1979, the damaged home was sold, as salvage, by Foremost to Today Mobile Homes, another of the Defendant's companies.

■ Defendant acknowledges that there was evidence sufficient to show a conspiracy, participated in by him, to destroy the Gilleses' home, but argues that there was a failure of proof that the conspiracy was to so destroy it by fire, and correctly points out that the proof requisite to a conviction herein includes proof that the parties intended such destruction by the specific means proscribed by the arson statute, i.e., fire or explosives. He contends that the only evidence of a conspiracy was the testimony of Nave and that it revealed only that Defendant had told him he wanted the home "destroyed" and that he had agreed to "do it."

■ Upon the evidence related, the jury found Defendant guilty of conspiring to commit arson, and the Court of Appeals reversed, holding that the State had failed to meet its burden of proof beyond a reasonable doubt, in that it had failed to present "substantial proof of probative value" from which a reasonable trier of fact could infer, beyond a reasonable doubt, there was an agreement between the Defendant, Survance, and Nave to destroy the home *by fire.* We disagree with this conclusion. Considering the substantial evidence that Defendant wanted the Gilleses' home destroyed in order that he would benefit from the insurance policy proceeds, and considering the improbability that Nave could effect such destruction by windstorm or some other peril against which losses are generally insurable, reasonable men could conclude, beyond a reasonable doubt, that the minds of Defendant and Nave met upon fire, as the means of destruction to be employed.

■ A conspiracy entails an intelligent and deliberate agreement between the parties. *Woods v. State,* (1980) Ind., 413 N.E.2d 572, 576. It is not necessary, however, to present direct evidence of a formal express agreement. *Williams v. State,* (1980) Ind., 409 N.E.2d 571, 573; *Woods,* 413 N.E.2d at 576. The agreement as well as the requisite guilty knowledge and intent may be inferred from circumstantial evidence alone, including overt acts of the parties in pursuance of the criminal act. *Beal v. State,* (1983) Ind., 453 N.E.2d 190, 194; *Williams,* 409 N.E.2d at 573; *Woods,* 413 N.E.2d at 576; *Patterson v. State,* (1979) 270 Ind. 469, 478, 386 N.E.2d 936, 942; *Johnson v. State,* (1975) 164 Ind.App. 263, 265, 328 N.E.2d 456, 458. Where the sufficiency of such evidence is in question, as the reviewing court, we examine it carefully, "not for the purpose of finding whether or not it is adequate to overcome every reasonable hypothesis of innocence, but with the view of deciding whether an inference may be reasonably drawn therefrom tending to support the finding of the trial court." *McAfee v. State,* (1973) 259

Ind. 687, 689, 291 N.E.2d 554, 556; *Johnson*, 328 N.E.2d at 458.

■ In *United States v. Holt*, (1939) 108 F.2d 365, the Seventh Circuit Court of Appeals held:

"[O]vert acts of the parties may be considered with other evidence and attending circumstances in determining whether a conspiracy exists, and where the overt acts are of a character which are usually, if not necessarily, done pursuant to a previous scheme and plan, proof of the acts has a tendency to show such pre-existing conspiracy, so that when proven they may be considered as evidence of the conspiracy charged."

108 F.2d at 368. Viewing all of the evidence, it clearly supports an inference that the Defendant possessed the requisite guilty knowledge and intent. Although the evidence here is circumstantial, a verdict upon which reasonable men may differ will not be set aside. *McAfee*, 259 Ind. at 689, 291 N.E.2d at 556. We cannot say that, based upon the evidence and the reasonable inferences to be drawn therefrom, the evidence was insufficient as a matter of law.

### ISSUE II

Defendant argues that the presiding judge lacked jurisdiction over the Defendant due to irregularities occurring in his appointment and during the trial. On the first morning of trial, January 28, 1983, Lawrence Arany was appointed as judge pro tempore by the duly elected judge of Marion Superior Court, Criminal Division # 2, Webster Brewer, and proceeded to commence the trial of the Defendant. The trial lasted three days, during which Judge Brewer did not absent himself from the court, but remained and conducted other court business during recesses. On the morning of the second day of the trial the court convened in a different courtroom because Judge Brewer was conducting other court business from the bench in the Marion Superior Court, Criminal Division, Room No. 2. Defense counsel was unable, upon a search of the court's order book, to find an order appointing Lawrence Arany as judge pro tempore for January 28, 1983. He claims that the irregularities in Arany's appointment, as well as in Judge Brewer's resumption of the bench at various times during the trial to conduct other court business, render Arany's actions null and void for lack of jurisdiction over the Defendant.

Defendant argues that no proper appointment of Arany as judge pro tempore was made prior to trial and has submitted affidavits to the effect that a search of the court's order book revealed no appointment for January 28, 1983. The Supplemental Record filed, however, does reveal the proper appointment. (Supplemental Record, Vol. VI p. 1137).

The irregularity of Judge Pro Tem Arany presiding during the presence of the regular judge and while he was conducting other judicial business in the same court could present a problem compelling reversal. In this case, however, there was no objection interposed, and we do not view the error as "fundamental" as heretofore defined in *Phillips v. State*, (1978) 268 Ind. 556, 561, 376 N.E.2d 1143, 1146, and *Nelson v. State*, (1980) Ind., 409 N.E.2d 637, 638.

■ A judge pro tempore, as opposed to a special judge who is appointed to act in a particular case, is appointed to act during the absence of the regular judge and exercises all of the powers of the regular judge during that period. *State ex rel. Hodshire v. Bingham, Judge*, (1941) 218 Ind. 490, 491, 33 N.E.2d 771; *Needham v. Needham*, (1980) Ind.App., 408 N.E.2d 562, 563; *Ind.R.Tr.P.* 63. It is axiomatic in Indiana law that a court may not have two judges with power and jurisdiction to act in the same case at the same time. *State ex rel. Freeman v. Superior Court of Marion County*, (1940) 216 Ind. 372, 376-77, 24 N.E.2d 928, 930. It is equally well settled, however, that the authority of one who acts as a judge *de facto* under color of authority cannot be collaterally attacked. *Gordy v. State*, (1974) 262 Ind. 275, 283, 315 N.E.2d 362, 367; *State ex rel. Crowmer v. Superior Court of Marion County*, (1957) 237 Ind. 633, 640, 146 N.E.2d 88, 92.

Any objections to the authority of an attorney appointed to try a cause must be made at the time when he assumes to act or they will be deemed waived on appeal. *Gordy v. State*, 262 Ind. at 283, 315 N.E.2d at 367, and cases cited therein.

In *Gordy* we were presented with a situation similar to the case at bar. Quoting from the Court of Appeals we held:

" 'The assignment of errors presenting this question is grounded on the proposition that the trial court had no jurisdiction to render the judgment from which this appeal is taken. The position of appellant on this proposition cannot be maintained. It is not contended that the Superior Court of Marion county did not have jurisdiction of the class of cases to which this one belongs; and its jurisdiction of the person of appellant is not questioned. It is therefore apparent that the court had jurisdiction of the subject-matter of the action and of the person of appellant, and had power to proceed to judgment. The defect pointed out was not affecting the jurisdiction of the court, but the right and authority of its presiding judge to act as such. The judge who presided at the trial of this case was acting under color of authority, and he was a judge *de facto* if not a judge *de jure*.

'It has been held repeatedly by this court and the Supreme Court that when a judge has been called or an attorney appointed to try a cause, and no objection is made at the time, or to his sitting in the cause when he assumes to act, all objections thereto will be deemed waived on appeal. We see no reason why the rule announced and applied to special judges should not apply with equal force to a judge *pro tempore*.'

"Such a rationale is equally applicable to the case at bar. Even if the Commissioner's assertion of authority was improper in this case (a proposition we need not address in this appeal), Defendant's conviction may not be set aside. The Commissioner did not merely usurp this authority and set up a mock court. He heard the case in the Lake Criminal Court, which clearly had jurisdiction over the subject matter as well as over the person of Defendant. The Commissioner was acting as judge, a duty he clearly may assume under the statute if his appointment is procedurally correct. Both parties submitted to his authority as a judge and neither questioned this authority until this appeal was initiated. Thus, he was operating under color of authority, and served as a judge de facto if not as a judge de jure. His authority as a judge de facto may not be raised on appeal for the first time."

*Gordy v. State*, 262 Ind. at 282–83, 315 N.E.2d at 367 (quoting *Jordan v. Indianapolis Coal Co.*, (1913) 52 Ind.App. 542, 544–45, 100 N.E. 880, 881).

In the present case Mr. Arany was acting under color of authority pursuant to his appointment as judge pro tempore, and as such was a judge *de facto*, if not a judge *de jure*. Any challenge of his authority to so act should have been made at the time the irregularities occurred, and may not be raised on appeal for the first time. *Gordy*, 262 Ind. at 283, 315 N.E.2d at 367.

Our opinion, however, should not be construed as approving of the procedure apparently employed in this case. The use of judges pro tempore in the manner evidenced by the supplemental record would be contrary to both the intent and the language of Trial Rule 63. A judge pro tempore may not properly act as judge of the court in one room while the regular judge of that court is exercising jurisdiction in another room.

## ISSUE III

We do not meet this issue. At the time the jury made the request that it be provided with a portion of the testimony, the Defendant objected to the court complying. The objection was overruled, but it was subsequently determined that the request had not been made by reason of any disagreement as to the testimony

but, rather, was by reason of some of the jurors not having heard it. The statute now relied upon by Defendant provides only that such request shall be complied with if there is a disagreement between jurors as to the testimony. Ind.Code § 34–1–21–6 (Burns Code Ed.1973). In any event, the error, if any, is not fundamental and was not preserved at the time it allegedly was committed or by the motion to correct errors. Errors not properly preserved in the trial and by the motion to correct errors are not available on appeal. *Turner v. State,* (1981) Ind., 428 N.E.2d 1244, 1247–48; *Poston v. State,* (1981) Ind., 429 N.E.2d 643, 644.

### ISSUE IV

Neither do we decide the merits of this issue, as the Defendant is here basing his claim of error upon grounds that differ from those argued in the trial court.

The Court proposed seventeen final instructions numbered from 7 through 23, for settlement. Defendant submitted none and announced that it had no objections to any of those proposed by the Court.

Among those instructions was No. 17 as follows:

#### *"INSTRUCTION NO. 17*

"Evidence relevant to the issues herein may be either direct or circumstantial. Direct evidence shows the existence of a fact in question without the intervention of proof of any other fact. It may be evidence of any eye witness to the main fact, or may be documentary in character, and, if true, may immediately establish the main fact to be proved.

"Circumstantial, or indirect evidence, consists of proof of collateral facts and circumstances from which the existence of the main fact to be proved may be inferred according to reason and common experience.

"Circumstantial evidence alone may be sufficient to prove any of the elements of the crime charged, and no greater degree of certainty is required whether the evidence be direct or circumstantial, for in either case the burden of proof must be beyond a reasonable doubt.

"However, where the evidence necessary to support a conviction is entirely circumstantial in character, it must be of such conclusive and persuasive force that it tends to point surely and unerringly to the guilty (sic) of the accused to any extent that it excludes every reasonable hypothesis of innocence."

■ Following discussion of the proposed instructions, the Court announced that it had previously decided to delete the fourth paragraph of No. 17, but, at that time, it was inclined to "leave it in," and counsel interposed, "Your Honor, I think if you're going to give this one, you'd almost have to—" A lengthy discussion followed during which the Court twice asked counsel to be specific with respect to the element of the crime charged that he believed to be supported only by circumstantial evidence. Counsel's responses, for the most part were very general and unresponsive to the questions asked. Ultimately he argued that the evidence that the fire did occur and the evidence that it had been accelerated by gasoline were circumstances tending to prove that the overt act requisite to a conviction for conspiracy had been committed, to which the court properly replied that Nave's testimony was direct evidence upon that element, and concluded that there was no need for the fourth paragraph to be given because a verdict of guilty could be properly returned without reliance upon circumstantial evidence. Defendant dictated into the record an objection to the giving of the instruction, as deleted. Although he did not dictate his grounds for objection, the prior dialogue is deemed sufficient for purposes of Trial Rule 51(C) and Appellate Procedure Rule 8.3(A)(7).

■ Now, on Appeal, Defendant argues that the inference that his mind and Nave's met upon fire, as the means Nave would employ to destroy the mobile home, is one upon which there was no direct evidence, and we agree. He may, therefore, have had a valid objection to the instruction, as

given. It is clear, from the record, however, that neither the court nor Defendant had considered that such was an issue in contention. No motion for judgment on the evidence was made. It was not mentioned when the instructions were settled, despite lengthy discussions upon the Defendant's entitlement during which the court twice asked for a specific statement as to the element of the crime which Defendant believed was supported by circumstantial evidence alone; nor was it mentioned in closing arguments. Even the motion to correct errors made no claim that the objection to the instruction was as now argued.

Grounds urged on Appeal may not differ from those raised at trial. *Carman v. State*, (1979) 272 Ind. 76, 79, 396 N.E.2d 344, 346; *Jones v. State*, (1973) 260 Ind. 463, 467, 296 N.E.2d 407; *Carman* and *Jones* involved challenges to the admissibility of evidence, but the same logic is applicable with regard to the objection to instructions. The objection to an instruction should advise the court in what regard the instruction is improper. *Whitten (Bailey) v. State*, (1975) 263 Ind. 407, 333 N.E.2d 86; *Lund v. State*, (1976) 264 Ind. 428, 345 N.E.2d 826. In *Hitch v. State*, (1972) 259 Ind. 1, 6, 284 N.E.2d 783, 786, we said: "It is unrealistic to think that counsel may, by a mere suggestion of error, thrust upon the court the burden of independently exhausting the possibilities that he may [be] correct."

### ISSUE V

Defendant argues that the testimony of Earl Nave, his co-conspirator, was "inherently unbelievable, inherently improbable and incredible" and, therefore, without probative value. We concede that without giving credibility to Nave's testimony, the conviction could not withstand the appellate test for sufficient evidence. We also acknowledge that on a few occasions we have reversed convictions because we found the evidence necessary to sustain them to be inherently unbelievable. However, such is not the case here. Defendant

contends that because Nave was an unsavory character with a history of prior criminality, that his testimony was part of a plea bargain made in connection with offenses with which he had been charged and that the physical evidence of the fire did not corroborate his testimony that he used an accellerant, we should take the case from the jury. "The credibility of witnesses, however, is to be judged by the trier of facts, not by courts of review.... The jury was aware of the witness' prior criminal record and the benefits flowing to him in exchange for his testimony. Unquestionably those elements rendered his veracity suspect, but they are in a better position than are we to make the credibility determination. We cannot say that a reasonable man could not believe the witness' testimony to be true." *Bentley v. State*, (1981) Ind., 414 N.E.2d 573, 574 and cases there cited. The jury is also the judge of the weight of the evidence. Although the mobile home was likely to have been entirely destroyed, had the fire been started in the manner to which Nave testified, rather than nearly destroyed or substantially damaged as appears from the unrefuted testimony, we cannot say that Defendant's guilt cannot be reconciled with such testimony.

### ISSUES VI, VII and VIII

We do not fully address these assignments, as they are not predicated upon rulings challenged at trial or by the motion to correct errors. Neither does it appear that the matters complained of rise to the height of "fundamental error," under *Phillips v. State*, 268 Ind. at 561, 376 N.E.2d at 1146 and *Nelson v. State*, 409 N.E.2d at 638.

Permitting a witness to testify, notwithstanding a violation of a previous separation order, lies within the sound discretion of the trial court.

Our substantial review of the record necessitated by the other assigned issues is in no way indicative of a trial conducted with undue dispatch.

The presumptive sentence for Defendant's crime is ten years. Not only did the trial court impose this sentence, it suspended seven years thereof, conditioned upon restitution being made. It is ludicrous to claim that the court would have assessed yet a lesser penalty, but for its consideration of the Defendant's commission of the crime as an impermissible aggravating factor. The court was merely commenting upon the seriousness of the Defendant's crime.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PIVARNIK, JJ., concur.