## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 26 2017, 6:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Cathy L. Sizemore-Roessler, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | April 26, 2017 <br><br> Court of Appeals Case No. 15A01-1609-CR-2090 <br><br> Appeal from the Dearborn Superior Court <br><br> The Honorable Sally A. McLaughlin, Judge <br><br> Trial Court Cause No. 15D02-1506-F2-9 |

**Altice, Judge.**

### Case Summary

Cathy L. Sizemore-Roessler appeals following her conviction for Level 2 felony conspiracy to commit dealing in methamphetamine. She presents the following two issues on appeal:

> 1. Did the State present sufficient evidence to support Sizemore-Roessler's conviction?
>
> 2. Is Sizemore-Roessler's twelve-year sentence inappropriate?

We affirm.

## Facts & Procedural History

During the time relevant to this appeal, Sizemore-Roessler owned property on Morgan Road in Dearborn County. There was a residence on the property, in which Sizemore-Roessler lived with her two adult sons, Joseph and Michael Sizemore, as well as Kenneth Reed, Corey Lyons, and Carl Gallardo. There was also a trailer located on the property, in which Michael and Mary Robbins, Janice Lay, and Jimmy McConnell resided.

In March 2015, Detective Carl Pieczonka of the Dearborn County Sheriff's Department received a tip from a confidential informant that Joseph was manufacturing methamphetamine on his mother's property and that multiple people were purchasing pseudoephedrine for Joseph to use in the manufacturing process. Detective Pieczonka began his investigation by accessing the National Precursor Log Exchange (NPLEX), a national database where purchases of pseudoephedrine are logged. State law limits the amount of

pseudoephedrine an individual may purchase to seven grams per month. NPLEX records revealed that Sizemore-Roessler had purchased 21.84 grams of pseudoephedrine between March 6 and May 30, 2015. NPLEX records further revealed that several of the individuals living on Sizemore-Roessler's property had also purchased pseudoephedrine during the same timeframe.

[5] During the course of his investigation, Detective Pieczonka learned that Sizemore-Roessler had been transporting other people to purchase pseudoephedrine. As a result, on May 6, 2015, Detective Pieczonka obtained a warrant to place a tracking device on Sizemore-Roessler's vehicle. Law enforcement used the tracking device to conduct mobile surveillance and observed Sizemore-Roessler transporting various individuals to and from a Kroger Pharmacy and other locations. Detective Pieczonka also learned that Sizemore-Roessler had purchased lithium batteries and Coleman camp fuel, both of which are methamphetamine precursors.

[6] Law enforcement executed a search warrant at Sizemore-Roessler's property on June 1, 2015. The officers located an active methamphetamine lab in a shed, along with numerous items related to methamphetamine manufacturing in the shed, in a burn pile near the shed, and inside Sizemore-Roessler's house. Police also found methamphetamine in the shed and inside the house. In Sizemore-Roessler's vehicle, police found batteries, receipts for lantern fuel and batteries, a handwritten shopping list for salt and coffee filters, and several handguns with clips and magazines.

As a result of the investigation, Sizemore-Roessler was charged, along with most of the individuals living on her property, with Level 2 felony conspiracy to commit dealing in methamphetamine in an amount greater than ten grams and Level 2 felony dealing in methamphetamine in an amount greater than ten grams. Sizemore-Roessler's codefendants pled guilty to lesser offenses, but Sizemore-Roessler's case proceeded to a bench trial, at which Sizemore-Roessler appeared pro se. At the conclusion of the evidence, the trial court convicted Sizemore-Roessler of the conspiracy charge and imposed a twelve-year executed sentence. Sizemore-Roessler now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

### 1. Sufficiency of the Evidence

Sizemore-Roessler argues that the State presented insufficient evidence to support her conspiracy conviction. In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Atteberry v. State*, 911 N.E.2d 601, 609 (Ind. Ct. App. 2009). Instead, we consider only the evidence supporting the conviction and the reasonable inferences flowing therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, the judgment will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008). It is not necessary that the evidence overcome every

reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the conviction. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007).

[9] To convict Sizemore-Roessler of Level 2 felony conspiracy to commit dealing in methamphetamine as charged, the State was required to prove that Sizemore-Roessler, with the intent to commit dealing in methamphetamine in an amount greater than ten grams, agreed with the charged co-conspirators to commit that offense and performed an overt act in furtherance of the agreement, namely, purchasing pseudoephedrine and/or other methamphetamine precursors. *Appellant's Appendix Vol. 2* at 36. *See also* Ind. Code § 35-41-5-2; Ind. Code § 35-48-4-1.1. To support a conspiracy conviction, the State need not present direct evidence of a formal express agreement. *Erkins v. State*, 13 N.E.3d 400, 407 (Ind. 2014). "The agreement as well as the requisite guilty knowledge and intent may be inferred from circumstantial evidence alone, including overt acts of the parties in pursuance of the criminal act." *Id.* (quoting *Survance v. State*, 465 N.E.2d 1076, 1080 (Ind. 1984)).

[10] Sizemore-Roessler does not dispute that methamphetamine was being manufactured on her property. Rather, she argues that the State presented insufficient evidence to establish that she was a party to any agreement to do so. We disagree. The State presented evidence that Sizemore-Roessler bought a significant amount of pseudoephedrine and other precursors for Joseph and Lyons, who were manufacturing methamphetamine on her property. The State also presented evidence that Sizemore-Roessler transported several other people

to do the same on numerous occasions. Indeed, Kenneth Reed testified that Sizemore-Roessler threatened to kick him out if he did not comply with her demands to purchase pseudoephedrine. Multiple witnesses testified that Sizemore-Roessler knew that these items were being used to manufacture methamphetamine, and Sizemore-Roessler admitted at trial that she knew Joseph and Lyons were manufacturing methamphetamine on her property. This evidence was more than sufficient to support Sizemore-Roessler's conspiracy conviction, and her arguments to the contrary are nothing more than requests to reweigh the evidence.

### 2. Inappropriate Sentence

[11] Sizemore-Roessler also argues that her twelve-year executed sentence is inappropriate. Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences. *See Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014), *cert. denied*, 135 S.Ct. 978 (2015). Pursuant to Ind. Appellate Rule 7, the Supreme Court authorized this court to perform the same task. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Per App. R. 7(B), we may revise a sentence "if after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Inman v. State*, 4 N.E.3d 190, 203 (Ind. 2014) (quoting App. R. 7). "Sentencing review under Appellate Rule 7(B) is very deferential to the trial court." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense

(such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[12] The determination of whether we regard a sentence as inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013) (quoting *Cardwell*, 895 N.E.2d at 1224). Moreover, "[t]he principal role of such review is to attempt to leaven the outliers." *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013). It is not our goal in this endeavor to achieve the perceived "correct" sentence in each case. *Knapp*, 9 N.E.3d at 1292. Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original).

[13] In order to assess the appropriateness of a sentence, we first look to the statutory range established for the classification of the relevant offense. Sizemore-Roessler was convicted of Level 2 felony conspiracy to commit dealing in methamphetamine. The sentencing range for a Level 2 felony is ten to thirty years, with an advisory sentence of seventeen and a half years. Ind. Code § 35-50-2-4.5. When a defendant has received the advisory sentence, he or she faces a "particularly heavy burden" in persuading this court that the sentence is inappropriate. *Fernbach v. State*, 954 N.E.2d 1080, 1089 (Ind. Ct.

App. 2011), *trans. denied*. That burden is even more formidable where, as here, the defendant receives a sentence well below the advisory.

[14] Considering the nature of the offense, we note that Sizemore-Roessler was an active participant in a criminal methamphetamine manufacturing enterprise. She knowingly allowed Joseph and Lyons to cook methamphetamine on her property and provided them with materials to do so on numerous occasions. Sizemore-Roessler purchased many of these items herself, and she also asked several others to do the same and transported them to do so. Furthermore, Reed testified that Sizemore-Roessler threatened to kick him out if he did not comply with her demands to purchase pseudoephedrine. The combined efforts of Sizemore-Roessler and her codefendants resulted in the purchase of 162.2 grams of pseudoephedrine over a three-month period. Law enforcement officers testified that this amount of pseudoephedrine would yield much more than ten grams of methamphetamine. We note further that police found four handguns and ammunition in Sizemore-Roessler's vehicle. Moreover, by allowing an active methamphetamine lab on her property, Sizemore-Roessler endangered the lives and health of the numerous people and animals who lived there.

[15] Considering the character of the offender, we acknowledge that Sizemore-Roessler has no prior criminal history. We note further, however, that Sizemore-Roessler has refused to follow some of the jail's rules and testified that she continues to refuse to move to general population as ordered. Sizemore-Roessler also stated that she would continue to take pseudoephedrine

even though her health conditions make it unsafe for her to do so and it can be used to make methamphetamine.

[16] Sizemore-Roessler's main argument is that her sentence is inappropriate because Joseph and Lyons, who carried out the actual manufacturing of methamphetamine, received shorter sentences than she did. Specifically, Joseph was sentenced to sixteen years with six years suspended and Lyons was sentenced to ten years executed. As an initial matter, we are unconvinced by Sizemore-Roessler's argument that she is less culpable than her codefendants simply because she did not undertake to manufacture methamphetamine herself. The evidence presented established that she was an active participant and provided numerous precursors and a location for Joseph and Lyons to cook methamphetamine. Moreover, Joseph and Lyons each pled guilty to a Level 3 felony, while Sizemore-Roessler was convicted after a bench trial of a Level 2 felony. It is therefore unsurprising that her executed sentence exceeds those of Joseph and Lyons.

[17] In sum, the trial court in this case exercised considerable lenience when it sentenced Sizemore-Roessler to twelve years—a sentence well below the advisory of seventeen and half years for a Level 2 felony. Sizemore-Roessler has fallen far short of establishing that her sentence is inappropriate.

[18] Judgment affirmed.

[19] Kirsch, J. and Mathias, J., concur.